OPINION OF THE COURT
Norman C. Ryp, J.
a. issue
If a "Dashing Dan” becomes a "Thrashing Man” LIRR train commuter, can the New York City Transit Police, 20 days later, arrest first — ask questions later on a fellow traveler’s complaint with warrantless false arrest impunity? No way!
Whether New York City’s Transit Authority Police, as a matter of law, sustains an unpleaded affirmative defense of legal justification (or labeled "reasonable grounds”, "reasonable cause” or "probable cause”) warranting summary judgment against a false arrest suit of a train commuter, arrested *789 for assault without a warrant, or prior inquiry, 20 days after a train fight, based solely on a cocommuter’s notarized statement and positive identification. An issue of first impression that finds such "railroading” procedurally and substantively unwarranted!
B. PROCEDURAL HISTORY AND FACTS
Defendants, New York City Transit Authority (NYCTA), Thomas R. Lawson, James Bergen, Gerard B. Connelly (NYCTA police officers and sergeant, respectively, each sued herein under first name "john”), move, under CPLR 3212, for summary judgment dismissing the complaint based upon reasonable and probable cause by an independent witness’ positive identification. Plaintiff, Elliot Tepperman, in opposition, argues there are material triable issues of fact concerning defendant’s probable cause at the time of the arrest, warranting, at least, denial of defendant’s CPLR 3212 summary judgment motion.
NYCTA’s CPLR 3212 motion is denied, nor is summary judgment in favor of plaintiff warranted for existing material trial issues of fact. (See, Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Smith v County of Nassau, 34 NY2d 18, 23 [1974]; Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 111 [1984].)
Plaintiff, Elliot Tepperman, seeks to recover $1,000,000 for personal injuries (physical and mental distress — alleging two causes of action — false arrest and negligence — for $500,000 each) resulting from the alleged warrantless false arrest by defendants, as NYCTA police officers and supervising sergeant. Defendants’ answers interposed general denials and, as an affirmative defense in diminution of damages, plaintiff’s culpable conduct.
The arrest, for assault in the third degree (Penal Law § 120.00 — class A misdemeanor), occurred on January 12, 1982 at about 8:35 a.m. on the Independent (IND) Subway Lines.
The facts and circumstances of the Wednesday, December 23, 1981, underlying incident are substantially controverted by plaintiff and complainant. It does appear uncontroverted that on December 23, 1981, plaintiff, who resided in Lido Beach, Long Island, New York, then 46, 6 feet 2 inches and 240 pounds, a construction project director, and complainant, then 25, an accountant, who resided in Oceanside, Long Island, New York, were fellow passengers in LIRR train No. *790 819, car No. 9681 (third car from the front) which plaintiff boarded at 7:40 a.m. at Island Park and complainant boarded at 7:47 a.m. at Oceanside, New York. Plaintiff and three other men sat in a "four seater” (i.e., two seats facing each other) four seats in front of complainant. Following the original incident reported by complainant to the NYCTA (at 8:52 a.m. via P. O. K. Greene), the NYCTA offered medical aid to complainant, who had no visible injuries and refused same (9:20 a.m., preferring to see his own doctor).
According to plaintiff, he was riding with three other men "I go to work with”, when within the first 20 minutes after plaintiff entrained (7:40 a.m.) and while "having a discussion with my friends” complainant "was yelling at us to keep quiet and shut up”. Plaintiff then told complainant to "keep quiet”; complainant again told plaintiff "to shut up”; plaintiff said "Nothing at that point”. When train No. 819 stopped in Pennsylvania Station, plaintiff reached for his coat and there were words exchanged between plaintiff and complainant about "shutting up”. Then, according to plaintiff, complainant "lowered his head and pushed” plaintiff "back four seats right into the seat I was sitting with full force with his head buried in my stomach”. Plaintiff deposed that he "tried to push him out of my stomach; take his head out of there” by "pushing against his shoulder with both arms”. Then, plaintiff testified "the other people in the part I was sitting * * * pulled him [plaintiff] off and said to him, 'Why don’t we leave the train before another incident occurs?’ ” Then plaintiff and complainant detrained. Plaintiff denied ever personally or seeing anyone else punch complainant although complainant was "pushing him [plaintiff] pretty hard”.
According to complainant’s controverted version as set forth in his NYCTA statement dated December 23, 1981, after occupying a seat, a group of four white male adults were engaged in a card game, became loud and unruly, with continuous use of profanity by one male card player, all to the annoyance of other subject train No. 819, car No. 9681 passengers. Complainant’s NYCTA statement further avers this continued for almost an hour (7:45-8:45 a.m.) when subject train entered the tunnel to Pennsylvania Station, New York, when complainant asked one of the boisterous card players to "be quiet”. The latter arose from his seat and replied: "Shut your mouth faggot or I’ll put your head in your asshole” and stuck the point of his umbrella to one inch of his face, adding "I ought to take your head off”, then sat down and continued *791 with the game. As the subject train pulled into, but before stopping, at Pennsylvania Station, the above card player-passenger got out of his seat and with a clenched fist, punched complainant in the face and body. In self-protection and fearing further aggression complainant tackled his assailant, whose friend restrained complainant and separated the combatants, advising his friend, "You better get the hell out of here.” Complainant later described his assailants as both male white, 40 years; one 6 feet 1 inch tall, with salt and pepper hair; the second 5 feet 11 inches tall, weighing 150-160 pounds.
C. APPLICABLE LAW
In a false arrest action, while the lack of legal justification is an essential element (Ryan v New York Tel. Co., 62 NY2d 494, 502 [1984]), there is a rebuttable presumption that an arrest and imprisonment without a warrant is unlawful (Smith v County of Nassau, 34 NY2d 18, 23 [1974], supra). The defendant (arresting agency) has the burden of proving legal justification as an affirmative defense but precluded from doing so under a general denial. (Broughton v State of New York, 37 NY2d 451, 457-458 [Wachtler, J.] [now Ch. J.], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]; Woodson v New York City Hous. Auth., 10 NY2d 30, 33 [1961]; Parvi v City of Kingston, 41 NY2d 553, 557 [1977]; Restatement of Torts § 35; Marks v Townsend, 97 NY 590 [1885]; Snead v Bennoil, 166 NY 325 [1901].) Proof of good faith does not negate such tort liability though it may mitigate damages. (Broughton v State of New York, 37 NY2d, at pp 458-459; Smith v County of Nassau, 34 NY2d, at pp 23-24.) Legal justification is established by showing the arrest is based upon probable cause. (Broughton v State of New York, 34 NY2d, at p 458; see also, Raysor v Port Auth., 768 F2d 34, 40 [2d Cir 1985], cert denied — US —, 106 S Ct 1227 [1986].) In this context the terms "reasonable cause”, "reasonable grounds” and "probable cause” are properly used interchangeably. (Veras v Truth Verification Corp., 87 AD2d 381 [1st Dept], affd 57 NY2d 947 [1982].)
Reasonable or probable cause varies depending upon the vagaries of each case, so that a tight narrow definition is of no aid. (People v Coffey, 12 NY2d 443 [1963], cert denied 376 US 916 [1964].) In People v Coffey, Chief Judge Desmond quoted the CJS summary of case law: " 'Where an officer, in good *792 faith, believes that a person is guilty of a felony, and his belief rests on such ground as would induce an ordinarily prudent and cautious man, under the circumstances to believe likewise, he has such probable cause for his belief as will justify him in arresting without a warrant.’ ” (Supra, p 451; see, 6A CJS, Arrest, § 22.) This agrees with New York’s applicable statutes.
CPL 70.10 (2) provides: " 'Reasonable cause to believe that a person has committed an offense’ exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay.” (L 1970, ch 996, § 1, eff Sept. 1,1971.)
CPL 140.10 (1) (b) provides that an officer may arrest a person without a warrant for a crime "when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise.” (L 1970, ch 996, § 1; L 1970, ch 997, § 1, eff Sept. 1, 1971.)
The existence of reasonable cause does not require " 'certitude’ that a crime was, or was being, committed” by the person being arrested (People v Cunningham, 71 AD2d 559, 560 [1st Dept 1979], affd 52 NY2d 927 [1981]). The evidence necessary to establish probable cause to justify an arrest need not be sufficient to warrant a conviction (People v Miner, 42 NY2d 937 [1977]). As the Appellate Division, First Department, has stated "Our inquiry is whether the facts were such as to warrant a belief of guilt in a reasonable and prudent man. A judgment so formed by a police officer may be based upon hearsay evidence, upon suspicious circumstances, upon probabilities.” (People v Horowitz, 27 AD2d 367, 368 [1st Dept 1967], remitted for further hearings 21 NY2d 55 [1967].)
Where the facts leading up to the arrest are undisputed, the existence of probable or reasonable cause to make the arrest is determined by the court, as a matter of law (Burns v Erben, 40 NY 463 [1869]; Toenis v Hommel, 59 AD2d 1000 [3d Dept 1977]; Freedman v New York Socy. for Suppression of Vice, 248 App Div 517 [1st Dept 1936], affd 274 NY 559 [1937]; Day v Levine, 181 App Div 261, 262 [1st Dept 1917], affd 228 NY 588 [1920]). The Day case must be considered with this case. There *793 the plaintiff, an elevator operator, was arrested at the place of his employment for stealing seven suits from his employer’s clothing factory, based on information furnished to the police by a fellow employee who stated he had actually seen the plaintiff remove the clothes from the employer’s premises. The Appellate Division, First Department, affirmed by the Court of Appeals, reversed a jury verdict in favor of the plaintiff and dismissed the false arrest claim, stating (p 262): "It is the settled law applicable to this class of cases 'that where there is no dispute about the facts, the question of the existence of probable cause, or, as generally stated, the absence or want of probable cause, is a question for the court and not for the jury.’ ”
However, only when the defense of probable cause is based upon conflicting evidence, as herein, from which reasonable persons might draw different inferences, the qustion is for the jury or trier of fact. (Smith v County of Nassau, supra; Clark v Nannery, 292 NY 105 [1944]; see also, People v Oden, 36 NY2d 382 [1975].)
A careful and thorough review of the motional submissions, including exhibits, lends support to the case law obligation not undertaken by NYCTA police officers or sergeant to a duty to fully inquire of all witnesses, including plaintiff, between the December 23, 1981 underlying incident and before the January 12, 1982 arrest, 20 days later. (People v McNatt, 65 NY2d 1046 [1985]; People v De Bour, 40 NY2d 210, 215-217 [1976].) The 20-day time gap surely afforded the opportunity to inquire and investigate to ascertain plaintiffs neutral witnesses’ versions of this morning rush hour commuter train, not uncommon, incident of heated verbal and physical assault. It is not unusual for the same train commuters to ride the same weekday LIRE train (No. 819), if not car No. 9681, each workday morning. There is no claim that the NYCTA police officers were in physical danger because plaintiff was armed as in NYCTA cited People v Moore (32 NY2d 67 [1973]; see, People v Brooks, 65 NY2d 1021 [1985]; People v Davis, 64 NY2d 1143 [1985]), or there was a danger to public safety (New York v Quarles, 467 US 649 [1984], revg 58 NY2d 664 [1982]). Absent a showing of a specific exception to the constitutional prescription on warrantless searches and arrests, such action, undertaken without probable cause has not been upheld by our Court of Appeals (People v McNatt, 65 NY2d, at p 1048). This is factually confirmed by the fact that the very day of the arrest, January 12, 1982, the investigating NYCTA *794 Detective Anthony F. Alma did "Recommend this case be closed”, subsequently confirmed by his superiors.
As noted above, the motional submissions, including the depositional transcripts, indicate substantially controverted facts and circumstances of the underlying December 23, 1981 nuclear incident leading up to plaintiff’s warrantless arrest for assault in the third degree. Such create a material, triable, factual issue (i.e., whether complainant or plaintiff was the victim or the aggressor and the existence of probable cause by a reasonable person of ordinary prudence and caution) (People v Coffey, supra). Thus, both NYCTA movant, and plaintiff opponent have failed to sustain a prima facie demonstration of entitlement to summary judgment (Ryan v New York Tel. Co., 62 NY2d 494, 503 [1984], supra; Zuckerman v City of New York, supra).
Accordingly, defendants’ (NYCTA police officer and sergeant) CPLR 3212 motion for summary judgment is denied. The parties shall conduct and complete all pretrial (CPLR art 31) discovery and notice this case for trial without undue delay.