**Paul MICALIZZI, Plaintiff,**

v.

**William CIAMARRA, individually, Louis Suarez, individually, Paul Stabile, individually, "John Doe", and the Village of Tuckahoe, N.Y., Defendants.**

No. 00 Civ. 0442(CM).

United States District Court,
S.D. New York.

May 29, 2002.

Brett A. Scher, Michael A. Miranda, Miranda & Sokoloff, LLP, Mineola, NY, for Defendants.

Drita Nicaj, for Plaintiff.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Paul Micalizzi brought this action against the Village of Tuckahoe and defendants William Ciamarra, Louis Sua-

rez, Paul Stabile and "John Doe" (later identified as Vito DiRienzo), all members of the Tuckahoe, New York Police Department, under 42 U.S.C. § 1983 and New York State law, for defamation, slander, battery, false arrest and/or false imprisonment. The claims arise out of an incident in which Mr. Micalizzi—himself a police officer in the Town of Mamaroneck—was briefly taken into custody and then released. Defendants seek to have the complaint dismissed in its entirety on their motion for summary judgment.

The motion for summary judgment is granted in part and denied in part as to Officer Ciamarra, granted in part and denied in part as to Detective Suarez, granted in part and denied in part as to the Village of Tuckahoe, and granted as to Officers Stabile and DiRienzo ("John Doe").

## STATEMENT OF FACTS

Plaintiff, Paul Micalizzi, is a police officer who has been employed by the Village of Mamaroneck for the past four years. Pl. 56.1 Stmt. ¶ 43. After completing a midnight to 8:00 A.M. shift on Monday, September 18, 2000, plaintiff went home. He was dressed in a plain white t-shirt, loose-fitting blue mesh nylon shorts that ended approximately one inch above the knees, a Miami Dolphins baseball cap and a pair of sandals. *Id.* at ¶ 44. After plaintiff went home, he accompanied his brother, Donald Micalizzi, to the Maxwell Institute, located on Yonkers Avenue in the Village of Tuckahoe. Donald Micalizzi is learning disabled and needed assistance getting to the Institute; plaintiff had accompanied his brother several times before. *Id.* at ¶ 45.

Plaintiff and his brother traveled in a 1988 Chevrolet Caprice with tinted windows, light blue in color with some bondo material which had been used to fill dents

and damages. *Id.* The siblings arrived on Yonkers Avenue, a commercial area which included a bar, the Maxwell Institute, a dance studio, a dentist's office, a restaurant and en electric business, at approximately 8:55 A.M. *Id.* at ¶ 46. After Donald parked the vehicle and went inside the Maxwell Institute, plaintiff remained inside the vehicle. *Id.* Plaintiff slept for approximately one half hour in the vehicle. *Id.* at 47.

Moments after plaintiff awoke, at approximately 9:40 A.M., a woman who he later learned was Kathleen O'Donnell, passed the Chevrolet while walking her dog. *Id.* at ¶ 48; Def. 56.1 Stmt. at ¶ 6.

Ms. O'Donnell stopped Officer Ciamarra, who was passing the scene on routine patrol. The parties dispute what Ms. O'Donnell said to Officer Ciamarra.

Plaintiff claims that Ms. O'Donnell informed Officer Ciamarra that she saw a man sitting in a strange vehicle and wanted him to check into the situation. Pl. 56.1 Stmt. ¶ 49; Nicaj Aff., Ex. 13 (O'Donnell Dep. at 9–11). In her deposition, Ms. O'Donnell testified as follows:

Q. What did you tell the police officer?

A. I said, this is strange, this situation looks strange to me.

\* \* \* \* \* \*

Q. When you said this, did you indicate anything in any way about the car?

A. I said, I don't remember exactly, all I know, it's a strange situation. . . . You know, I didn't accuse anybody of anything. I said, it looks like a strange situation, maybe you should check it out.

O'Donnell Dep. at 9–10.

Officer Ciamarra has a different recollection of the situation. Defendants contends that Ms. O'Donnell ran up to Officer Ciamarra and stated "There's a man sit-

ting in that car, and he's naked." Miranda Decl., Ex. L (Ciamarra Dep. at 18).

Ms. O'Donnell left the scene after making her statement to Officer Ciamarra. Def. 56.1 Stmt. ¶ 8. Officer Ciamarra radioed for backup. Although what Ms. O'Donnell stated to Officer Ciamarra is in dispute, it is clear that when he radioed for backup, Officer Ciamarra stated that he was investigating a report of a possibly naked man. The other three police officer defendants heard Officer Ciamarra's radio transmission, and all of the contemporaneously-generated evidence is consistent with Ciamarra's contention that he was looking into a complaint about a possibly naked man. DiRienzo Event Report, Decl. Ex. E ("he was investigating a possible complainant of a person exposing himself"); Stabile Dep. at 33, Aff. Ex. 16 ("I heard P.O. Ciamarra request assistance for a very possible naked man"); Suarez Dep. at 9, Aff. Ex. 15 ("Officer Ciamarra [radioed that] it was reported that a man was naked in the area.") Detective Suarez and Officer Stabile responded to the scene. 56.1 ¶ 15, 16.

Plaintiff claims that he saw Ms. O'Donnell speak to Officer Ciamarra. Plaintiff, who recognized that his vehicle was odd-looking and had tinted windows, believed that the woman might be reporting a concern about him sitting in the vehicle. Pl. 56.1 Stmt. ¶ 53. As he was about to exit the Caprice with his identification, Officer Ciamarra approached the vehicle and ordered him to raise his hands. *Id.* at ¶ 54.

At this time, an unmarked vehicle arrived at the scene. This vehicle was operated by Detective Suarez. Defendant Stabile also arrived at the scene in a marked vehicle. *Id.* at ¶ 56. Neither of these officers participated in the interrogation of the plaintiff.

While Ciamarra was still at plaintiff's car, plaintiff identified himself as a police officer and showed Ciamarra his badge. *Id.* at ¶ 57. Officer Ciamarra then ordered plaintiff out of the vehicle, ordered him to place his hands on the front of the hood and demanded to see further identification verifying that plaintiff was a police officer. *Id.* at ¶ 58. Plaintiff produced further identification, and Officer Ciamarra continued to search and question plaintiff. *Id.* at 59.

Either Officer Ciamarra or Detective Suarez then instructed Officer Stabile to locate Ms. O'Donnell, whose name and address was unknown. Pl. 56.1 Stmt. ¶ 60. Detective Suarez also contacted Desk Officer Vito DiRienzo at the Tuckahoe Police Department and asked that DiRienzo contact the Mamaroneck Police Department. *Id.* ¶ 61. Detective Suarez claims that he did this in order to verify that plaintiff was really a police officer at Mamaroneck. Def. 56.1 Stmt. ¶ 29. DiRienzo did call the Mamaroneck police department. He spoke to someone there and communicated that someone had accused plaintiff of exposure. Pl. 56.1 Stmt. ¶ 62; DiRienzo Dep. at 24. Detective Sergeant Holland from Mamaroneck—who either spoke with DiRienzo or was told about DiRienzo's statement—asked that the Detective handling the case in Tuckahoe call him as soon as possible. Pl. 56.1 Stmt. ¶ 62.

Meanwhile, Officer Stabile had located Ms. O'Donnell a few blocks away. He asked her to get into his marked police vehicle, and drove her by plaintiff, who was standing near his car. Ms O'Donnell verified that plaintiff was the occupant of the vehicle she identified earlier and Officer Stabile radioed this information back to Detective Suarez and Officer Ciamarra. *Id.* at ¶ 66.

There is a slight dispute as to the order of events following Ms. O'Donnell's positive identification of plaintiff. Defendants

contend that following the positive identification, plaintiff was handcuffed so that he could be brought in to headquarters. Def. 56.1 Stmt. ¶ 21. Following his being handcuffed, defendants contend that Detective Suarez performed a search of the interior of plaintiff's car. He claims that he was looking for possible evidence, such as camera equipment that plaintiff may have used to take pictures of young children inside the dance studio on the street, or for a weapon, since plaintiff claimed to be a police officer. Def. 56.1 Stmt. ¶ 22. Plaintiff argues that his car was searched by Detective Suarez after his identification by Ms. O'Donnell, but before he was handcuffed and physically restrained by Officer Ciamarra. Pl. 56.1 Stmt. ¶ 68—73.

It is undisputed that Detective Suarez did search plaintiff's vehicle for a weapon or camera equipment. Def. 56.1 Stmt. ¶ 22. Instead of those items, Suarez located a marble notebook containing poems or love notes in child-like handwriting and a list of grade level and room assignments for teachers at a local elementary school. Id. ¶ 23—26. Papers in the notebook indicated that it belonged to someone named Don. Id. ¶ 26. One of the handwritten notes in the notebook that caught Detective Suarez' attention was as follows:

> THE MINEITE I TACH YOU I GET NOUCKED OFF MY FEET. THE SMOUTHN'S OF YOUR SKIN, AND THE SMELF OF YOUR HAIR THE LOOK IN YOUR EYE'S. LOVE IT IS ALL THEREIN ONE BEAUTIFUL WOMEN. LOVE IF THE SUN REVUSE TO SANE I WOULD STILL LOVE YOU TO THE END OF TIME. CAN'T YOU SEE I HAVE MADE UP MY MANDE I WENT TO MAKE YOU MINE.

Def. 56.1 Stmt. ¶ 24. Following .the search of the car and the handcuffing (or the handcuffing and the search of the car),

Officer Ciamarra and Detective Suarez decided to take plaintiff into custody. Plaintiff was placed in the back of Officer Ciamarra's police car at approximately 10:00 A.M. and arrived at the Tuckahoe Police Department a few minutes later. Pl. 56.1 Stmt. ¶ 73. When plaintiff arrived at the police headquarters, Desk Officer DiRienzo read him his Miranda rights. Id. at ¶ 75. Plaintiff was then taken to the detention area where he was handcuffed to a metal bracket attached to the wall. Id. While there, he claims that he cried, started to hyperventilate and had difficulty breathing. Id.

When Detective Suarez arrived at headquarters, he called Detective Sergeant Holland at Mamaroneck, as he been requested to do. Id. at ¶ 76. Plaintiff claims that Suarez informed Holland that a woman reported seeing plaintiff naked in a vehicle and that plaintiff had been arrested for exposing himself to the woman. Id. Detective Sergeant Holland confirms this. Holland Dep. at 9–10. Defendants claim that Suarez advised Holland only that the plaintiff had been brought in for further investigation following a civilian complaint that he was naked in his car. Def. 56.1 Stmt. ¶ 30.

After this conversation, Holland informed the Chief of Police in Mamaroneck of the substance of his conversation with Suarez, and Holland, along with a Detective Bart DiNardo, went to Tuckahoe police headquarters to investigate. Id. They arrived at the station at around 10:30 A.M., Def. 56.1 Stmt. at ¶ 33. When they got there, they spoke with Officer Ciamarra, who told them that "he was on patrol and got a report from a woman that [there] was a car parked on Yonkers Avenue and there was a man in there that was naked." Holland Dep. at 18.

Sometime after plaintiff arrived at police headquarters, Ms. O'Donnell · arrived to

make and sign a supporting deposition. At some time around 10:40 A.M., Ms. O'Donnell signed her supporting deposition. In her written supporting deposition, Ms. O'Donnell attested as follows

> I noted a blue car parked with a white male, with a baseball cap on, sitting in the car front seat. As I approached the blue car I noted that the man was looking in my direction. I looked in the driver's car window and noticed his upper thigh area and lower portion of his hip to be without clothing. His back was turned to me as I walked by. I thought it was strange to see a man sitting in the car that way. I looked back and saw the man looking out the back window in my direction, he was looking over his right shoulder. I saw a police car coming down Yonkers Ave., I approached the police officer and asked him to look into the situation. I then continued to walk up Yonkers Ave. with my dog.

Tuckahoe Police Department Complaint Report, case no. 00–00199, Nicaj Aff. Ex. 7. Shortly after Ms. O'Donnell signed this statement, and it became clear that she had never seen plaintiff exposing his genitals, Officer Ciamarra claims that he removed the handcuffs from plaintiff, but did not release plaintiff. Def. 56.1 Stmt. ¶ 35. Plaintiff contends that he remained handcuffed for at least two hours, until the last 20 minutes of his confinement. Pl. 56.1 Stmt. ¶ 79.

After he allegedly removed plaintiff's handcuffs, Officer Ciamarra claims that he conferred with the an Assistant District Attorney from the Sex Crimes Unit of the Westchester County District Attorney's Office regarding the arrest of plaintiff. Def. 56.1 Stmt. ¶ 36. Sometime between 12:00 P.M. and 1:00 P.M., plaintiff was released. Defendants retained possession of the notebook found in the vehicle, and

informed plaintiff that criminal charges could still be brought against him. Pl. 56.1 Stmt. ¶¶ 79–80. Although there was an investigation by the Mamaroneck Police Department regarding this incident, no disciplinary charges were filed against plaintiff by Mamaroneck. *Id.* at ¶ 82.

This action was filed in January 2001. Affm. Ex. 20. At some point during discovery, Vito DiRienzo was identified as "John Doe." The claims against the four officers and the Village of Tuckahoe are as follows:

1. § 1983 claim against Officer Ciamarra, Detective Suarez, and Officer Stabile for violation of the Fourth Amendment right to be free from unreasonable seizure.

2. § 1983 claim against Officer Ciamarra, Detective Suarez, and Officer DiRienzo (a.k.a. "John Doe") for violation of the Fourteenth Amendment right to liberty.

3. Claim against the Village of Tuckahoe for damages for defamation, battery, and false arrest and/or false imprisonment under New York State law.

4. Claim against Officer Ciamarra and Detective Suarez for damages for battery, and false arrest and/or false imprisonment under New York State law.

5. Claim against Officer Ciamarra and Officer DiRienzo. for damages for slander under New York State law

Following discovery, the defendants filed a motion for summary judgment on July 20, 2001.

## SUMMARY

The complaint alleges that the defendants were not justified in taking the plaintiff into custody. The key question on the federal and state claims of false arrest and false imprisonment is whether a citizen-eyewitness' request that a police offi-

cer check into what she thought was a "strange" situation was sufficient basis for the officer to arrest plaintiff.

A police officer is not authorized to take a suspect into custody without probable cause, but police are immune from suit under federal constitutional law for false arrest when they make an arrest based on a mistaken but objectively reasonable belief that probable cause exists. There exists in this case a disputed issue of material fact concerning whether Officer Ciamarra had probable cause or whether he is entitled to qualified immunity as a matter of fact; he is not entitled to qualified immunity as a matter of law. Because it was objectively reasonable for Officers Suarez and Stabile to rely on Officer Ciamarra's radio transmission that a "possibly naked man" had been reported, those officers are entitled to summary judgment dismissing the Fourth Amendment false arrest and false imprisonment claims asserted against them on the grounds of qualified immunity. New York state law does not recognize the doctrine of qualified immunity, so the state law claim of false arrest and false imprisonment against Detective Suarez can not be dismissed.

Plaintiff fails to state a claim for violation of his Fourteenth Amendment rights separate and apart from his false arrest claim, so his second cause of action is dismissed as well.

The remaining pendent state law claims are a claim of battery against Officer Ciamarra and Detective Suarez, and a claim for slander against Officers Ciamarra and DiRienzo. The claim of battery is dismissed as to Detective Suarez, but not as to Officer Ciamarra. The claim for slander is dismissed as to both Officers Ciamarra and DiRienzo.

The Village of Tuckahoe is responsible for any violations of state law committed by the defendant Officer Ciamarra under the theory of respondeat superior. Therefore, the claims against the Village for slander is dismissed, and the claims for battery, false arrest and false imprisonment are not dismissed.

## DISCUSSION

On a motion for summary judgment, the movant is entitled to judgment as a matter of law if there are no genuine issues of material fact. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a genuine issue for trial exists such that a reasonable jury could find in favor of the non-movant, then summary judgment must be denied. *See Id.* at 248, 106 S.Ct. at 2509. The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir.1993).

## I. THE FIRST CAUSE OF ACTION IS DISMISSED AS TO DEFENDANTS SUAREZ AND STABILE, BUT NOT AS TO DEFENDANT CIAMARRA

■ Section 1983 of the Civil Rights Act provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 28 U.S.C. § 1983. Section 1983 is not an independent source of rights, but it provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989), *quoting Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979).

■ The plaintiff asserts both federal and state claims for false arrest or imprisonment against Officer Ciamarra, Detective Suarez and Officer Stabile. False arrest claims brought under § 1983, such as the First Cause of Action, are governed by the tort law of the forum state. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). A claim for false arrest, premised on the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a false arrest claim under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). To establish false arrest, the plaintiff must show that the defendant intentionally confined him without justification or consent. *Id.*

■ Under New York State law, a police officer is authorized to take a person into custody when the officer has probable cause to believe that the person has committed a crime or an offense, whether in his presence or otherwise. N.Y.Crim. Proc. Law § 140.10 (McKinney's 1981); *People v. De Bour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976). A finding of probable cause is a complete defense to federal and state claims of false arrest. *Weyant*, 101 F.3d at 852. Probable cause exists if the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant" a reasonably cautious person in the belief that an offense has been or is being committed. *Id.; see Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949). The question is whether the totality of circumstances shows a fair probability of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 230–231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Mere suspicion is not enough. *Id.* at 276, 103 S.Ct. at 2352. Whether or not probable cause existed may be determinable as a matter of law, but if the pertinent events and knowledge of the arresting officer is in dispute, then the question is properly left to the jury. *Weyant*, 101 F.3d at 852.

Each officer's role must be analyzed separately. This cause of action can be dismissed against Detective Suarez and Officer Stabile, but can not be dismissed as against Officer Ciamarra.

## A. *Officer Ciamarra*

■ According to the plaintiff, Ms. O'Donnell thought a man sitting in a parked car appeared strange, so she stopped Officer Ciamarra, who was driving past, to ask that he investigate. Affm. Ex. 7; Affm. Ex. 13 at 9–10. Ms. O'Donnell's supporting deposition, taken the day of the incident, indicates that she had observed the man's "upper thigh area and lower portion of hip to be without clothing," Affm. Ex. 7. The deposition does not use the word "naked" or otherwise indicate that she told Officer Ciamarra that the man was exposing himself.

Officer Ciamarra claims that Ms. O'Donnell said, "there's a man sitting in that car there and he's naked." Affm. Ex. 14 at 20. Officer Ciamarra radioed for backup, and commenced his investigation. His radio call indisputably referred to a possibly naked man.

Drawing all inferences in favor of the plaintiff, Ms. O'Donnell made no accusation of any kind regarding the plaintiff; she merely asked Officer Ciamarra to check out a man sitting in an old parked vehicle. Affm. Ex. 13 at 10. When Officer Ciamarra approached the vehicle, the plaintiff (who was not naked) explained that he had accompanied his learning-disabled brother to the Maxwell Institute, located about seventy-five yards down the street, where his brother was attending a session. 56.1 ¶ 14. Without some more specific information, the fact that he was

parked in front of a children's dance studio, instead of in a spot closer to the building where his brother was located, was insufficient to create probable cause to take the plaintiff into custody. Since the substance of Ms. O'Donnell's statement to Officer Ciamarra is critical to establishing probable cause, and what she said is sharply disputed, Officer Ciamarra is not entitled to summary judgment unless he is entitled to qualified immunity as a matter of law. He is not.

 Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims of false arrest and false imprisonment as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Finding probable cause is a discretionary act within a police officer's official capacity. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). An officer who makes an arrest lacking probable cause is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed. *See Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997); *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3041. This mistaken but objectively reasonable belief has recently been referred to as arguable probable cause. *See, e.g., Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir.2001); *Coons v. Casabella,* 284 F.3d 437, 440 (2d Cir.2002); 1A Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation Claims and Defenses* § 3.21 (3d ed.1997). Thus, an arresting officer is entitled to summary judgment on qualified immunity grounds if, from the view of the record most favorable to the plaintiff, a jury could conclude that arguable probable cause existed. *Cerrone,* 246 F.3d at 202; *see Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

 Here, if the jury found the facts as plaintiff (supported by Ms. O'Donnell) alleges them to be, no reasonable police officer could have believed that he had probable cause to arrest plaintiff. It is not a crime for a man to sit in a car in front of a dance studio; neither is it a crime to park one's car a few buildings away from the spot where one's acquaintance is located. Regardless of what Ms. O'Donnell said, plaintiff was not in fact naked when Officer Ciamarra came upon him. He was able to identify himself and he had a perfectly innocent explanation for his presence in the car on Yonkers Avenue. With nothing more (and if the facts are as plaintiff alleges, Officer Ciamarra had nothing more than a report of something "strange"), there is no evidence whatever of criminality. The facts could not support an arrest; no reasonable officer could have thought otherwise.

Thus, Officer Ciamarra is not entitled to qualified immunity as a matter of law. Whether he is entitled to it as a matter of fact depends in large measure on how the jury resolves the dispute over what Ms. O'Donnell did or did not say.

### B. *Officer Stabile*

 Officer Stabile, who is named only in the first cause of action alleging that he violated plaintiff's Fourth Amendment rights, is entitled to qualified immunity for his participation in the plaintiff's arrest.

Officer Stabile responded to Officer Ciamarra's radioed call for backup in the investigation of a possibly naked man, and arrived shortly after Detective Suarez. He had no contact or conversation with plaintiff. He was almost immediately instructed to find the complainant so that

she could identify plaintiff as the man she had complained of to Officer Ciamarra. He found Ms. O'Donnell a few blocks away from plaintiff's vehicle. He asked her to get into his police vehicle and to come along with him so that she could verify that plaintiff was the man she had complained as they drove by him. Ms. O'Donnell identified plaintiff. Officer Stabile then asked her to come down to police headquarters to make a written supporting deposition. She agreed, but drove herself to headquarters. After Ms. O'Donnell exited Officer Stabile's vehicle, he had no further involvement with the investigation and arrest of plaintiff.

■■■■■ As discussed above, a police officer is entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate plaintiff's clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982), *Coons*, 284 F.3d at 440. A police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause. *People v. Rosario*, 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 456, 585 N.E.2d 766 (1991), *People v. Lypka*, 36 N.Y.2d 210, 213, 366 N.Y.S.2d 622, 326 N.E.2d 294 (1975). Therefore, while an arrest may be found unconstitutional if probable cause was in fact lacking, *see Whiteley v. Warden*, 401 U.S. 560, 568–69, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971), an officer who participates in the arrest is nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause. *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir.2000); *cf. Cerrone*, 246 F.3d at 202.

All Officer Stabile knew was that Officer Ciamarra received a complaint of a possibly naked man in a parked car. It is questionable whether Officer Stabile even "participated" in plaintiff's arrest; assuming that he did, however, his actions are immune from suit because it was objectively (even unobjectively) reasonable for him to do what he did. Thus, Officer Stabile is entitled to qualified immunity on the First Cause of Action, and to summary judgment dismissing the complaint as against him.

### C. Detective Suarez

■■■■■ Detective Suarez, the police officer who searched plaintiff's car and found the notebook, is entitled to summary judgment dismissing the First Cause of Action against him—the Federal claim of false arrest—on qualified immunity grounds.

The undisputed evidence shows that he, too, heard Officer Ciamarra's report about a naked man in the Yonkers Avenue area of Tuckahoe. Thus, Suarez, like Stabile, was entitled to act in reliance on his fellow-officer's report, and assist in the investigation of plaintiff for possibly indecent exposure. However, Detective Suarez more actively participated in plaintiff's arrest by searching the interior of plaintiff's car. If this search was illegal, it may have resulted in an illegal arrest, and Detective Suarez would not be immune from plaintiff's claim of false arrest.

■■■■■ New York law permits a limited search of a vehicle incident to a lawful arrest, *People v. Barclay*, 201 A.D.2d 952, 607 N.Y.S.2d 531 (4th Dep't 1994). "Incident to a lawful arrest, police may search the area within the arrestee's control for contraband, instrumentalities or evidence, without a warrant, because a minimally intrusive, spatially limited, contemporaneous search does not encroach appreciably more on the arrestee's privacy than the

arrest." *Grinberg v. Safir*, 181 Misc.2d 444, 452, 694 N.Y.S.2d 316, 323 (N.Y.Sup. 1999) (*citing Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685(1969)); *People v. DeSantis*, 46 N.Y.2d 82, 412 N.Y.S.2d 838, 385 N.E.2d 577 (1978). However, the facts are in dispute as to whether Detective Suarez searched plaintiff's car before or after he was handcuffed (and therefore arrested) by Ciamarra. According to plaintiff, he was only handcuffed and arrested after Detective Suarez searched his car and found (presumably) his brother's notebook. If this is true, the search was illegal, and, regardless of whether Detective Suarez relied on Officer Ciamarra's report of a naked man, this search resulted in an improper arrest. Since the facts are disputed, I can not find that the search was proper as one incident to a lawful arrest.

■ However, Detective Suarez' search was proper under the "automobile exception." Police officers may conduct a warrantless search of a motor vehicle without violating the Fourth Amendment when the officers have probable cause to believe that a vehicle contains contraband, instrumentalities or evidence of crime. *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); *United States v. Arbalaez*, 98 CR 941, 1999 WL 980172, at *5 (S.D.N.Y. Oct.27, 1999); *People v. Blasich*, 73 N.Y.2d 673, 543 N.Y.S.2d 40, 541 N.E.2d 40 (1989); *Grinberg v. Safir*, 181 Misc.2d at 452, 694 N.Y.S.2d 316. This exception still applies even after a vehicle has been immobilized. *Labron*, 518 U.S. at 940, 116 S.Ct. 2485. Detective Suarez reasonably relied on Officer's Ciamarra's description of the complaint against plaintiff. He was told that plaintiff was an off-duty police officer who was suspected of exposing himself near a children's dance studio. With this (albeit somewhat false) information, Detective Suarez had probable cause to believe that plaintiff, allegedly a police officer, had a weapon (contraband) inside the car, or that he may find some evidence of a crime within the car.

■ When Suarez searched the car, he discovered a notebook that contained the following:

THE MINIATE I TACH YOU I GET NOUCKED OFF MY FEET. THE SMOUTHN'S OF YOUR SKIN, AND THE SMELF OF YOUR HAIR THE LOOK IN YOUR EYE'S. LOVE IT IS ALL THEREIN ONE BEAUTIFUL WOMEN. LOVE IF THE SUN REVUSE TO SANE I WOULD STILL LOVE YOU TO THE END OF TIME. CAN'T YOU SEE I HAVE MADE UP MY MANDE I WENT TO MAKE YOU MINE.

Def. 56.1 ¶ 24; Ex. C. Other papers in the notebook had information about the classroom assignments for teachers at a local elementary school, *id.* ¶ 26. Coupled with the report that Suarez heard of a possibly naked man in the car, this discovery gave Suarez probable cause to participate in plaintiff's arrest. At the very least, reasonable officers could have differed on the question, which provides Detective Suarez with the shelter of qualified immunity on the Federal false arrest claim.

II.. *THE MOTION FOR SUMMARY JUDGMENT DISMISSING THE SECOND CAUSE OF ACTION IS GRANTED AS TO ALL DEFENDANTS*

The Second Cause of Action alleges that Defendants Ciamarra, Suarez and DiRienzo violated plaintiff's Fourteenth Amendment right to liberty. The claim is pleaded in a conclusory way, and it is not at all clear what liberty right or rights plaintiff is asserting. However, a thorough review of the record reveals that the only liberty

interest of plaintiff's that could have been violated in this case was his right to be free from false arrest and illegal search—i.e., the same constitutional rights asserted in the First Cause of Action as Fourth Amendment violations. To this extent, the Second Cause of Action against Ciamarra and Suarez is duplicative and is dismissed. Since the complaint does not allege any other constitutional violation against any of these three officers, the Second Cause of Action must be dismissed in its entirety.

 When a § 1983 claim is asserted, a court must identify the specific constitutional violation alleged in order to ascertain the proper standard against which to judge the validity of the claim. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). A § 1983 claim for false arrest implicates both Amendments because the Fourth Amendment applies to the States pursuant to the Fourteenth Amendment. *See Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). But a Fourth Amendment violation is the gravamen of the First Cause of Action. The question is whether the record supports any inference that a separate Fourteenth Amendment cause of action exists for violation of a different constitutional right.

From plaintiff's arguments concerning defendants' intent, motive, and/or state of mind, Opp. at 6, it appears that he grounds the Second Cause of Action on one of two theories: that the motivation for the arrest was improper, or that the alleged slander violated plaintiff's liberty. Neither of these constitutes a due process violation.

 Improper motivation can amount to a violation of constitutional rights in some cases. *See, e.g., Blue v. Koren*, 72 F.3d 1075, 1081–83 (2d Cir. 1995) (duplicative prosecution, retaliation for petition of government); *Flaherty v.*

*Coughlin, III*, 713 F.2d 10 (2d Cir.1983) (retaliation for filing a prisoners' rights class action suit). Whether improperly motivated conduct violates the Fourteenth Amendment depends on two issues. First plaintiff must establish that he was deprived of a constitutionally protected liberty or property interest. *Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). If he overcomes that hurdle, he must establish that none of the provisions within the Bill of Rights "provides an explicit textual source of constitutional protection" for the alleged government action. If it does, then "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994), *quoting Graham*, 490 U.S. at 395, 109 S.Ct. at 1871.

 As to the question of improper motivation for a law-enforcement official, the Second Circuit distinguishes acts that have a legitimate law-enforcement purpose from those that do not. *Poe v. Leonard*, 282 F.3d 123, 136–37 (2d Cir.2002) (citing cases). Claims arising from investigations for law-enforcement purposes, including a § 1983 claim premised on a person's arrest, are to be judged by the standards of the Fourth Amendment. *Snow v. Village of Chatham*, 84 F.Supp.2d 322, 327 (N.D.N.Y.2000), *citing Albright; see Poe*, 282 F.3d at 137. In *Albright*, the charges against the plaintiff were dropped because "selling a substance that looked like cocaine," does not constitute an offense under State law. *Albright*, 510 U.S. at 268 n. 1, 114 S.Ct. at 810 n. 1. Albright alleged that the arrest violated his Fourteenth Amendment liberty interest to be "free from criminal prosecution except upon probable cause." *Id.* at 270, 114 S.Ct. at 810–11. His complaint was dismissed and

the Supreme Court affirmed because "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claims must be judged." *Id.*

In contrast, the Fourteenth Amendment may apply when objectionable conduct of a law enforcement official falls outside the context of a criminal investigation and has no legitimate law-enforcement purpose. *Poe*, 282 F.3d at 136–37. In *Poe*, the Second Circuit held that a state trooper had to face trial for violation of the plaintiff's Fourteenth Amendment right to privacy for videotaping her undressing, without consent and without any law-enforcement investigative purpose. *Id.* at 139.

If the liberty interest claimed by Mr. Micalizzi is his right to be free from criminal prosecution except upon probable cause, then *Albright* directs that the violation be tested under the standards of the Fourth Amendment, because the conduct complained of was undertaken within the context of a criminal investigation. *Albright*, 510 U.S. at 270, 114 S.Ct. at 810–11. In a case of false arrest, subjective intent does not give rise to a separate due process claim. *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective state of mind is not relevant. *Id.* at 399, 109 S.Ct. at 1873.

Mr. Micalizzi may be claiming a liberty interest to be free from slander, based on (1) Officer Ciamarra's comment that he was (or may have been) naked, and (2) Officer DiRienzo's statement to members of the Mamaroneck Police Department that he had been arrested for indecent exposure. Although slander or defamation by a government official is actionable under state law, the fact that the offending words were spoken by an official acting under color of state law does not automatically transform a common law claim for defamation into a due process violation. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The Fourteenth Amendment extends only to those acts that deprive a person of a recognized Constitutional or federal right. *Id.* at 700, 96 S.Ct. at 1160. The Supreme Court ruled long ago that a reputational injury is not constitutional in its dimensions. *Id.*

In *Paul*, the plaintiff claimed a deprivation of his Fourteenth Amendment right to liberty by the police officers who printed his name and picture on a flyer of "Active Shoplifters" and distributed the flyer to local merchants. *Id.* 424 U.S. at 697, 96 S.Ct. at 1159. The plaintiff had been charged but not yet convicted of shoplifting. *Id.* The Supreme Court held that the plaintiff's "interest in reputation was neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul*, 424 U.S. at 712, 96 S.Ct. at 1166.

Mr. Micalizzi's (presumed) liberty deprivation due to the slander in this action is nearly identical to the plaintiff's claim in *Paul* since in both cases the defendants communicated the grounds for the plaintiff's arrest prior to a conviction. Whether or not Mr. Micalizzi has a valid defamation claim under state law, the claim is not actionable under the Fourteenth Amendment.

The plaintiff's second cause of action asserts a violation of the Fourteenth Amendment right to liberty, but since no Fourteenth Amendment violation can be identified, that claim is dismissed.

III. *THE FOURTH CAUSE OF ACTION IS DISMISSED AS TO DEFENDANT SUAREZ BUT NOT AS TO DEFENDANT CIAMARRA*

In the Fourth Cause of Action, plaintiff asserts pendent state law claims for bat-

tery, false imprisonment and false arrest against Officer Ciamarra and Detective Suarez.

The claims for false imprisonment and false arrest track the federal violations asserted in the First Cause of Action. For the reasons stated above, Officer Ciamarra is not entitled to summary judgment on those claims. Additionally, Detective Suarez is not entitled to summary judgment on the state law claims of false arrest and false imprisonment even though he was awarded summary judgment on their federal counterpart. He is however, entitled to summary judgment on the battery claim.

 To establish a claim for false arrest/ false imprisonment under New York law, a plaintiff must show (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir.1996). A claim for false arrest or false imprisonment premised on the Fourth Amendment right to be free from unreasonable seizures is "substantially the same" as a false arrest/false imprisonment claim under New York law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996).

I decided above that an issue of fact existed as to whether there was probable cause to arrest plaintiff, and that Officer Ciamarra did not enjoy qualified immunity on these claims, Thus, summary judgment may not be granted to Ciamarra on the state law claims of false arrest and false imprisonment either.

 I also concluded above that Detective Suarez was entitled to summary judgment on plaintiff's federal false arrest and false imprisonment claims on qualified immunity grounds. However, there is no "qualified immunity" doctrine for state law

claims of false arrest and false imprisonment, so this claim against Detective Suarez can not be dismissed.

 Under New York law, existence of probable cause for an arrest serves as a legal justification for the arrest and an affirmative defense to the claim. *Martinez v. City of Schenectady,* 97 N.Y.2d 78, 85, 735 N.Y.S.2d 868, 872–73, 761 N.E.2d 560, 564–65 (2001). However, good faith does not negate such liability, although it may mitigate damages. *Tepperman v. City of New York,* 133 Misc.2d 788, 791, 508 N.Y.S.2d 142, 145 (N.Y.City Civ.1986) (*citing Broughton v. State of New York,* 37 N.Y.2d 451, 458–59, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)). I have already determined that there is a jury question concerning probable cause for plaintiff's arrest. Detective Suarez's reasonable reliance on Officer Ciamarra's representation of Ms. O'Donnell's complaint is not sufficient to release him from the state law claim of false arrest and false imprisonment at this stage.

 The common law claim for battery injects new issues into the case. A battery is an "intentional wrongful physical contact with another person without consent." *Lederman v. Adams,* 45 F.Supp.2d 259, 268 (S.D.N.Y.1999) (*quoting Charkhy v. Altman,* 252 A.D.2d 413, 678 N.Y.S.2d 40, 41 (1st Dep't 1998)) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105 (2d Cir.1993)); *see also Sulkowska v. City of New York,* 129 F.Supp.2d 274, 294 (S.D.N.Y.2001); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 9, pp. 39–42 (5th ed.1984). Here, the alleged battery is the search of plaintiff's person, the cuffing of plaintiff at the time of his arrest, and the handcuffing of plaintiff to a wall after he had been transported to police headquarters. Complaint ¶ 14.

 If an arrest is determined to be unlawful, any use of force against a

plaintiff may constitute a battery, regardless of whether the force is considered reasonable as applied during a lawful arrest. *See Sulkowska*, 129 F.Supp.2d at 294; *Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340, 665 N.Y.S.2d 440, 440 (2d Dep't 1997) (holding that a police officer committed a battery when he touched the plaintiff during an unlawful arrest) (*citing Budgar v. State of New York* 98 Misc.2d 588, 414 N.Y.S.2d 463, 466 (1979) (finding that "since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car")). Because a question of fact exists as to whether plaintiff's arrest was unlawful in this case, the Court cannot grant summary judgment as to Ciamarra, because it is undisputed that Officer Ciamarra, without plaintiff's consent, placed his hands on plaintiff when he searched him and handcuffed him.

■ Detective Suarez, on the other hand, never actually touched plaintiff. Officer Ciamarra searched plaintiff after ordering him out of his car. Plaintiff's 56.1 Statement ¶ 58. Officer Ciamarra handcuffed plaintiff. Micalizzi Dep. at 51. Detective Suarez searched plaintiff's car, but never touched his person. Plaintiff does not contend otherwise. Since Detective Suarez never touched plaintiff, there could not have been any "intentional wrongful physical contact with another person without consent" necessary to sustain a claim of battery under the law of New York. *See Lederman v. Adams*, 45 F.Supp.2d at 268. The state law claim of battery against Detective Suarez must be dismissed.

## IV. THE FIFTH CLAIM FOR RELIEF IS DISMISSED AS TO DETECTIVE DIRIENZO AND AS TO OFFICER CIAMARRA

In the Fifth Cause of Action, plaintiff alleges that Officers Ciamarra and DiRienzo are liable for slander. Plaintiff claims that Officer Ciamarra "radioed Tuckahoe Police Headquarters [and] falsely reported that he was investigating a naked male who from the inside of a parked automobile supposedly had exposed himself to [Ms.] O'Donnell." Complaint ¶ 13. Plaintiff also alleges that "As a further result of Defendants' conduct the Village of Tuckahoe Police Department's desk officer ('John Doe') [later identified as Officer DiRienzo] contacted Detective/Sergeant Robert Holland of the Village of Mamaroneck Police Department at Suarez' direction and falsely reported that Plaintiff while inside an automobile had 'exposed himself' to 'a female and [had] been arrested for doing so." Complaint ¶ 15.

■ The elements of a cause of action for slander under New York law are (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) "of and concerning" the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander per se, and (7) not protected by privilege. *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001); *see also A & E Products Group L.P. v. The Accessory Corp.*, 00 Civ. 7271(LMM), 2001 WL 1568238, at *6 (S.D.N.Y. Dec. 7, 2001).

### A. Officer Ciamarra

■ Truth is a complete defense to a claim of defamation. *DiBella v. Hopkins*, 187 F.Supp.2d 192, 199 (S.D.N.Y. 2002); *Dillon v. City of New York*, 261 A.D.2d 34, 39, 704 N.Y.S.2d 1, 6 (1st Dep't 1999). The only alleged defamatory statement made by Ciamarra is his radioed transmission to the Tuckahoe police department stating that "he was investigating a naked male who from the inside of a

parked automobile supposedly had exposed himself to [Ms.] O'Donnell." Although there is a question of fact as to whether Ms. O'Donnell ever stated that plaintiff was naked, it is undisputed that Ciamarra was in the process of investigating some type of complaint made by Ms. O'Donnell. Therefore, plaintiff's claim must be dismissed under the New York doctrine of qualified privilege.

New York courts recognize "an established rule that communications made by one person to another upon a subject in which both have an interest are protected by a qualified privilege." *Brennan v. Granite Equip. Leasing Corp.*, 60 A.D.2d 877, 401 N.Y.S.2d 275, 277 (1978) (internal citations and quotations omitted). "Under New York law, a qualified privilege arises when someone makes a bona fide communication upon a subject in which he or she has an interest or duty to speak, and that communication is made to another person having a comparable duty." *Nyitray v. Johnson*, 1998 WL 67651 (S.D.N.Y.1998) (citing *Garson v. Hendlin*, 141 A.D.2d 55, 60, 532 N.Y.S.2d 776, 779 (2d Dep't 1988)).

Statements made by police officers during an investigation that are germane to the investigation are protected by qualified privilege, even if erroneous. *Lee v. City of Rochester*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (4th Dep't 1998). In order to overcome this privilege, plaintiff must demonstrate that defendant acted with malice. *Schuss v. William Penn Life Ins. Co. of New York*, 188 A.D.2d 456, 590 N.Y.S.2d 539 (1992); *Lee*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (citing *Kaplan v. MacNamara*, 116 A.D.2d 626, 627, 497 N.Y.S.2d 710 (2d Dep't 1986)). Plaintiff may not rely on falsity alone to raise an inference of malice; the false statement must be consistent with an intent to injure plaintiff. *Lee*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (citing *Shapiro v. Health*

*Plan of Greater New York*, 7 N.Y.2d 56, 61, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959)).

There is no allegation in plaintiff's complaint, and no evidence in the record, that Officer Ciamarra's initial radio transmission was motivated by malice. As such, the Officer's Ciamarra's qualified privilege in his radio transmission to the police department has not been overcome and he is entitled to summary judgment.

### B. *Officer DiRienzo*

As noted above, truth is a complete defense to a claim of defamation. *DiBella v. Hopkins*, 187 F.Supp.2d at 199; *Dillon v. City of New York*, 261 A.D.2d at 39, 704 N.Y.S.2d at 6. Here, at the direction of Detective Suarez, Officer DiRienzo contacted the Village of Mamaroneck Police Department to confirm Mr. Micalizzi's statement that he was a police officer. During the call, Officer DiRienzo disclosed that the plaintiff had been accused of exposure. 56.1 ¶ 61–62. There are various versions of the conversation. Officer DiRienzo claims that he told Holland that the Tuckahoe police had Micalizzi in headquarters for further investigation on an allegation that he exposed himself, DiRienzo Dep. at 24, while Detective Sergeant Holland claims that DiRienzo told him either that Micalizzi had just been arrested for exposure or was about to be arrested, Holland Dep. at 15.

The following facts are undisputed. Micalizzi was taken into custody by the Tuckahoe Police Department. He was physically arrested and restrained. Tuckahoe Police Officers were investigating what crime to charge him with. When Officer DiRienzo told Detective Sergeant Holland (viewing the facts most favorably to plaintiff) that plaintiff was under arrest or was in custody and about to be charged with exposure, these words were true. He was

in custody on suspicion of indecent exposure. Since truth is a complete defense, Officer DiRienzo can not be held liable for slander; summary judgment on this claim must be granted as to him.

V. *THE THIRD CAUSE OF ACTION AGAINST THE VILLAGE IS DISMISSED AS TO THE CLAIM OF SLANDER, BUT NOT DISMISSED AS TO THE CLAIMS OF BATTERY, FALSE ARREST AND FALSE IMPRISONMENT*

■ In the Third Cause of Action, plaintiff alleges that the Village of Tuckahoe is liable under New York law for his pendent state law claims of defamation, battery, false arrest and false imprisonment under a theory of *respondeat superior*. Plaintiff does not assert a *Monell* claim in connection with his federal constitutional claims.

■ When a plaintiff invokes the doctrine of *respondeat superior*, "the plaintiff has the burden of establishing by a fair preponderance of the credible evidence that the act complained of occurred while [defendant police officers] were acting within the scope of [their] employment" for the Village of Tuckahoe. *Hacker v. City of New York*, 26 A.D.2d 400, 402–03, 275 N.Y.S.2d 146 (1966), *aff'd*, 20 N.Y.2d 722, 283 N.Y.S.2d 46, 229 N.E.2d 613, *cert. denied*, 390 U.S. 1036, 88 S.Ct. 1436, 20 L.Ed.2d 296 (1968); *McDowell v. City of New York*, 208 A.D.2d 507, 507, 616 N.Y.S.2d 788. 208 A.D.2d 507, 616 N.Y.S.2d 788 (2d Dep't 1994). It is undisputed that all defendant officers were acting within the scope of their employment during the alleged acts occurred.

Plaintiff's claim for defamation (slander) has been dismissed as to Officers Ciamarra and DiRienzo, so this claim must also be dismissed against the Village of Tuckahoe. Plaintiff's claims for false arrest and false imprisonment have not been dismissed as against Officer Ciamarra and Detective Suarez, and his claim for battery has not been dismissed against Officer Ciamarra. Both officers were acting within the scope of their authority at all relevant times. Therefore, plaintiff's claims against the Village for battery, false arrest and false imprisonment are not dismissed at this time.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is decided as follows:

(1) First Cause of Action—summary judgment is GRANTED as to Detective SUAREZ and Officer DIRIENZO ("John Doe"), but DENIED as to Officer CIAMARRA;

(2) Second Cause of Action—summary judgment is GRANTED;

(3) Third Cause of Action—summary judgment is GRANTED IN PART to the VILLAGE of Tuckahoe as to the claim of slander, but DENIED IN PART as to the claims of battery, false arrest and false imprisonment;

(4) Fourth Cause of Action—summary judgment is DENIED as to Detective SUAREZ and as to Officer CIAMARRA;

(5) Fifth Cause of Action is GRANTED as to both Officers CIAMARRA and DIRIENZO.

This constitutes the decision and order of this Court.