Anna M. Hacker, Respondent, *v.* City of New York, Appellant, et al., Defendant.

First Department, December 1, 1966.

*Alfred Weinstein* of counsel (*Seymour B. Quel* and *Francis X. Olwell* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*Robert S. Friedman* of counsel (*Richard D. Friedman* with him on the brief; *Friedman, Friedman & Friedman,* attorneys), for respondent.

Stevens, J.   Defendant the City of New York appeals from an order and judgment entered May 28, 1965, as amended by an order and judgment entered November 8, 1965, which held the

city liable to respond in damages to the plaintiff and directed an assessment thereof. Liability was premised upon a determination that the defendant was negligent in that it required a codefendant, George W. Hacker, husband of the plaintiff (not involved in this appeal), to handle and clean his service revolver before Hacker had received sufficient and thorough training and that Hacker at the time of the incident complained of was acting within the scope of his employment.

Hacker became a probationary policeman January 4, 1960 and the accident occurred February 4, 1960. Prior to the date of the occurrence Hacker had participated in 5 of 16 sessions of instruction and had received some training in the handling and care of revolvers and pistols, including the cleaning of such weapons. Such instruction was group rather than individual instruction.

Testimony on behalf of the plaintiff was to the effect that Hacker and his wife, the plaintiff, visited the apartment of Hacker's brother, John Hacker, on the night of February 4, 1960. Hacker testified that he and his wife had stopped by to see if his brother and his brother's wife wished to go shopping. Mrs. John Hacker was not at home and they decided to wait for her. Hacker testified that he decided to clean his revolver since there was an inspection coming up the following day. He took the weapon from his holster, removed the cartridges from the cylinder, and began cleaning it on a sweater which he was wearing. At that time three persons were in the small living room of the apartment. Sometime, variously estimated at 15 to 30 minutes after his arrival, the defendant Hacker's revolver was discharged, causing serious injury to the plaintiff who was in a bedroom two small rooms distant. Hacker testified that immediately prior to the discharge of the weapon he had replaced the cartridges and the gun discharged between such time and his returning it to the holster. The police blotter introduced in evidence by the plaintiff indicates that the plaintiff was shot by her husband "while he was holstering his service gun." Sergeant O'Connell, called on behalf of the plaintiff, testified that he had a conversation with Patrolman Hacker who informed him that he had been sitting on the couch wiping the revolver off with his sweater, during the course of which he had shown the weapon to his brother, that he stood up to reload the revolver, at which time his brother had stepped behind him to lower the phonograph machine and at that time " as I reloaded the revolver and closing the chamber the gun discharged." A Detective Grosso, also called on behalf of the the plaintiff and who made an investigation of the occurrence, testified that

Patrolman Hacker stated he had been cleaning his gun, that after unloading it he handed it to his brother, who handed it back to Patrolman Hacker, who reloaded it, shut the cylinder and the gun went off. Detective Grosso testified that Patrolman Hacker stated '' the gun might have been cocked at the time.''

Patrolman Hacker testified that he did not see his wife leave the room and that he does not remember pulling the trigger of the gun. He did not remember telling any of the investigating officers that he handed the gun to his brother, though he stated his brother grabbed or held a part of the gun but '' didn't hold it proper by himself.'' This, from the account, was prior to the discharge of the weapon. At one point Patrolman Hacker said he did not have his finger on the trigger and at another point he did not remember if he had, and then he concluded that he must have had his hand on the trigger because it discharged. In response to interrogation by the Police Inspector on the night of the occurrence the inspector testified that Patrolman Hacker stated he did not pull the trigger and the gun did not go off as a double action. While there was no set rules by the Police Department where a gun must be cleaned, Patrolman Hacker testified he had been told to clean it at home.

The evidence in the record indicates that 12½-pound pressure is required to fire this revolver in double action and 3½-pound pressure is required to fire a single action. The cylinder, if pushed out from the frame, cannot be returned to position if the gun is cocked. The hammer has to be down to return the cylinder to its place. Only three persons were in the apartment at the time of the occurrence — the plaintiff, her husband Patrolman Hacker, the codefendant, and Patrolman Hacker's brother. The brother was never called, nor in fact did the plaintiff appear for testimony at the trial. No one has given a credible explanation of exactly what happened and we are left to speculate. Before it can be determined that the patrolman was acting within the scope of his employment and furthering his master's business, it is essential to know exactly what happened. That is the gap in the account of the events which transpired. Or, to state it more precisely, there is no proof of how the accident happened. As previously indicated in reference to the pressure required, the gun could not be fired unless the trigger was pulled and Patrolman Hacker denied pulling the trigger. Plaintiff has the burden of establishing by a fair preponderance of the credible evidence that the act complained of occurred while Patrolman Hacker was acting within the scope of his employment for the City of New York. This burden has not been met.

This action was tried by the court without a jury. Under such a circumstance it is within the power of this court to grant such final judgment as it feels the trial court, upon the evidence, should have granted (*Bernardine* v. *City of New York,* 294 N. Y. 361; *Bruno* v. *Kosnac,* 13 A D 2d 650; *Victor Catering Co.* v. *Nasca,* 8 A D 2d 5; CPLR 5522). It is of course discretionary with this court in a nonjury case whether to modify, reverse, remand for reconsideration of the facts, or make new findings as we deem warranted (cf. *Ruegg* v. *Fairfield Securities Corp.,* 308 N. Y. 313, 318; *Hurwitz* v. *Hurwitz,* 3 A D 2d 1009). A sufficient opportunity having been afforded the plaintiff to produce evidence in support of her claim, it is a reasonable conclusion that the facts which could or would be presented have been exhausted and would be essentially the same as those now before us. Accordingly, no good purpose could be served by a remand or the direction for a new trial.

In sum, we find there is a lack of proof as to how the accident happened, that the gun could not be fired unless the trigger were pulled, such deficiencies being sufficient in themselves to warrant dismissal of the complaint, and further that it was physically impossible for the accident to have happened as related by Patrolman Hacker.

Patrolman Hacker's lack of memory as to certain basic details surrounding this tragic accident is as incomprehensible as it is unbelievable. His failure to observe plaintiff's departure from the living room of admittedly small dimensions, when her path of exit necessarily lay past him, and directly within his range of vision, defies explanation. Particularly there is no evidence that his back was turned or his attention diverted.

Where the doctrine of *respondeat superior* is invoked it must be shown that the person committing the act was an employee of the party sought to be charged, and that the act was committed within the scope of such employment (cf. *Bing* v. *Thunig,* 2 N Y 2d 656). Here the relationship of employer-employee is established but the commission by the employee of the act necessary to produce the result is not proved. In the view most favorable to plaintiff the case as presented by plaintiff is so obscured by contradictions, evasions and inherent improbability as to warrant rejection as incredible (cf. *Polley* v. *Polley,* 11 A D 2d 121, 124, affd. 9 N Y 2d 1006; *Hull* v. *Littauer,* 162 N. Y. 569). In any event " we are not required to give credence to a story so inherently improbable that we are morally certain it is not true." (*Bottalico* v. *City of New York,* 281 App. Div.

339, 341.) Unless there be credible proof of what happened, i.e., how the act complained of occurred, it cannot be determined whether such act was committed by the employee, and whether the employee was then acting within the scope of his employment (cf. *Burns* v. *City of New York*, 6 A D 2d 30). The deficiency here is in the proof as to what actually happened on the night in question.

The order and judgment appealed from should be reversed, on the law and on the facts, and the complaint dismissed as to the City of New York, with costs and disbursements to appellant city.

CAPOZZOLI, J. (dissenting). On all the evidence in this case a fair question of fact was presented to the trial court as to whether the defendant, city, should be held liable for the actions of the defendant, Hacker, leading to the discharge of the revolver, which he says was purely accidental.

I agree that the testimony of the defendant, Hacker, was equivocal, uncertain and at times contradictory. This is attempted to be explained on the basis of the excitement which followed the shooting and which clouded his memory as to the details of what took place. The plaintiff, having been out of the room when the gun was discharged, cannot be expected to give evidence of what defendant, Hacker, was doing with the gun when it went off.

It is plaintiff's theory that the city is liable for the injuries which she suffered because of the negligent carriage and handling of his revolver by a policeman who is required to carry it at all times, even when off duty. It was on this theory that the trial court found for the plaintiff and its verdict should not be disturbed. The individual defendant, a probationary policeman for one month, had no right to take his gun out of the holster and to handle it in the manner in which the evidence shows he did. He was clearly careless and negligent. We are not dealing with a case where there was a purposeful shooting occurring during personal quarrels, brawls or other personal conduct of policemen divorced from acts relating to their employment.

As was stated in *Collins* v. *City of New York* (11 Misc 2d 76, 79, affd. 8 A D 2d 613, affd. 7 N Y 2d 822): "The instant circumstances demonstrate that the defendant policeman though technically within the off-duty classification was engaged in the execution of a function specifically prescribed by the defendant employer the City of New York and the careless or negligent performance of such duty — carrying a gun — nonetheless constituted performance of a requirement of his employment and

in furtherance of his employer's interest. The employer is therefore responsible for the consequences of such acts." (Also, see, *Peer* v. *City of Newark,* 71 N. J. Super. 12; *Rives* v. *Bolling,* 180 Va. 124.)

I agree with the trial court's finding that " there was no substantiation to the city's contention that the accident happened in a manner different than alleged by the plaintiff. To find otherwise would be a premise based on speculation."

It may be noted that the defendant, Hacker, was discharged from the Police Department after he pleaded guilty to charges brought against him by the defendant, city, based on allegations of negligence in the care and handling of his gun. (*Collins* v. *City of New York, supra.*)

I dissent and vote to affirm the order and judgment as amended, and to remand the case for an assessment of damages, in accordance with the order and judgment of the trial court.

RABIN, J. P., McNALLY and STEUER, JJ., concur with STEVENS, J.; CAPOZZOLI, J., dissents in opinion.

Order and judgment reversed on the law and on the facts, and the complaint dismissed as to the City of New York, with $50 costs and disbursements to the appellant.