*321 OPINION OF THE COURT
Daniel D. Angiolillo, J.
Petitioners in this consolidated proceeding commenced identical proceedings pursuant to CPLR article 78 for review of respondents’ implementation of a no-smoking provision at the Westchester County Jail. At the time of commencement of the proceedings each of the petitioners was an inmate at the County Jail. By decision and order filed and entered on February 27, 1995, this court denied petitioners’ application for temporary relief, which applications were considered as requests for stays pursuant to CPLR 7805, and declined to stay implementation of the no-smoking policy (see, Matter of Jarrett v Westchester County Dept. of Health, 166 Misc 2d 777). That determination was adhered to upon determining motions for reargument. In addition, in the decision and order filed and entered on March 31, 1995, the proceedings were ordered consolidated.
Petitioners allege the no-smoking policy is arbitrary and capricious, exceeds State and County Law by prohibiting smoking outdoors as well as indoors, and denies them the equal protection of the law. Petitioners argue that as the policy has its genesis in the concerns of the State Public Health Law regarding exposure to smoke as opposed to penological concerns or considerations, no special deference should be afforded respondents’ determination. Petitioners argue that the policy is more restrictive in the jail setting than it is in other County facilities and they are therefore denied the equal protection of the law. Petitioners assert the implementation of the policy would necessarily increase the stressful situation inherent in incarceration. An affidavit from petitioner Gruñe, submitted on the motion for reargument, asserted there was no therapy or treatment available to jail inmates.
The Legislature of the State of New York enacted provisions for the regulation of smoking in certain public areas. (Public Health Law art 13:E.) Employers were required to adopt and implement a written smoking policy. (Public Health Law § 1399-0 [6].) While such policy is intended to apply only to places of employment as defined by the Public Health Law, which references indoor areas, there is no restriction on more comprehensive smoking policies. (Public Health Law § 1399-r [13, [33.)
County of Westchester Executive Order No. 1 of 1995 has mandated that every County indoor workplace shall be a *322 smoke-free area, including the County Jail. Faced with a requirement that there be no smoking or carrying of lighted tobacco products in the County Jail, the respondent Commissioner of the Department of Correction promulgated the directive at the heart of this proceeding. The directive, dated December 28, 1994, effective February 1, 1995, prohibits smoking by anyone in the facility, relegates Correction Department employees to smoking only on their scheduled lunch break and only outside, prohibits inmates from possessing any smoking materials and prohibits the sale of smoking products through the inmate commissary.
The regulation of smoking in prison facilities is not novel to Westchester County. "A Federal Bureau of Prison regulation prohibits smoking in those areas of federal penitentiaries where 'smoking would pose a hazard to health or safety’ and allows the warden to designate smoking and non-smoking areas in other areas. 28 C.F.R. § 551.162 (1989). The American Jailers Association, which represents 6,500 jail administrators, passed a resolution endorsing bans on smoking by inmates. As of May, 1990, county and state corrections departments in thirteen states have either banned or are considering banning smoking.” (McKinney v Anderson, 924 F2d 1500, 1509 [9th Cir 1991].) McKinney involved a Federal civil rights lawsuit by a nonsmoking inmate who alleged his exposure to secondary cigarette smoke (ETS — environmental tobacco smoke) violated his Eighth Amendment rights. McKinney alleged the exposure to such smoke was the infliction of cruel and unusual punishment. Following a remand, the Supreme Court of the United States affirmed the Court of Appeals determination that McKinney had stated a cause of action under the Eighth Amendment. (Helling v McKinney, 509 US 25 [1993].) While there might be difficulties of proof as McKinney would have to show: he was exposed to unreasonably high levels of ETS; that such exposure created a risk so grave that society viewed it as violative of contemporary standards of decency; and that prison officials were deliberately indifferent to his situation, the complaint nonetheless set forth a cognizable cause of action.
Confinement in a correctional facility necessarily involves restrictions on an inmate’s actions and freedom of movement. An inmate may not choose who may be housed nearby or with whom or where he will associate at work or during recreation. While an inmate may be considered a member of the "public” for purposes of the Public Health Law as opposed to an employee, as an inmate he does not share the same rights as the *323 public at large. Even if the Legislature had not expressed its wisdom in the enactment of Public Health Law article 13-E, the administrators of correctional facilities could not be deliberately indifferent to the dangers of exposure to environmental tobacco smoke following the decision in Helling v McKinney (supra).
That petitioners are inmates of a correctional facility controls the determination of these proceedings. "[P]rison officials have broad administrative and discretionary authority over the institutions they manage and * * * lawfully incarcerated persons retain only a narrow range of protected liberty interests * * * 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.’ Price v. Johnston, 334 U.S. 266, 285”. (Hewitt v Helms, 459 US 460, 467 [1983].) "There is no constitutional right to smoke in prison.” (Grass v Sargent, 903 F2d 1206 [8th Cir 1990]; see also, Doughty v Board of County Commrs., 731 F Supp 423 [Colo 1989]; Standfield v Hay, 849 SW2d 551 [Ky Ct App 1992].)
Respondent Commissioner of Correction was required to implement a smoking ban in the jail. It was his determination that the most effective and efficient means of ensuring compliance with that ban was to prohibit possession of tobacco and related smoking products by all inmates. While the ban on smoking did not have its genesis in security-related concerns, the manner of the implementation of the mandated ban within the jail setting clearly falls within the discretionary authority of the jail administrators. "[Correction officials have the right and duty to control the property and possessions within the prison under their supervision.” (Matter of Blades v Twomey, 159 AD2d 868, 869 [3d Dept 1990].) "Moreover, the safe and efficient operation of a prison on a day-to-day basis has traditionally been entrusted to the expertise of prison officials, see Meachum v. Fano, supra, [427 US] at 225.” (Hewitt v Helms, supra, 459 US, at 470.)
The possibility that an alternative view might allow smoking on the open-air recreation decks does not authorize the substitution of that view for the determination made by the administrators charged with the day-to-day operation of the jail. The fact that smoking is allowed in outdoor recreation areas in prisons in other jurisdictions is of no moment. (See, Beauchamp v Sullivan, 21 F3d 789 [7th Cir 1994].) The existence of different approaches to similar problems does not make respondent’s determination in this case arbitrary or capricious. *324 Beauchamp v Sullivan (supra) is instructive in that the Seventh Circuit Court of Appeals dismissed as frivolous an inmate’s claim that the prison’s smoking policy was cruel and unusual punishment and denied him the equal protection of the law. Respondents’ determination in this case was neither arbitrary nor capricious.
There is absolutely no merit to any equal protection argument in this case. It is immaterial that the Westchester County smoking ban is not as stringent in its impact on employees and the public at other County facilities. Nor is there any infringement of petitioners’ rights as a result of the employees of the Correction Department being authorized to smoke outside on their lunch breaks. Petitioners are inmates in a correctional facility.
Absent the creation of a suspect classification or the involvement of fundamental rights, a viable equal protection claim will be sustained only if it is established that the rule does not rationally further some legitimate articulated State purpose. (Matter of Doe v Coughlin, 71 NY2d 48 [1987]; Maresca v Cuomo, 64 NY2d 242 [1984]; Matter of Crawford v Pearles, 205 AD2d 307 [1st Dept 1994].)
Petitioners argue the outdoor recreation areas could be adequately monitored by existing staffing levels. Petitioners further assert existing security positions could adequately ensure that no lit tobacco products left the outdoor recreation areas.
While respondents could have chosen to allow the possession of tobacco but not the means to ignite it, the argument cannot be made that such limited ban would be as effective in ensuring compliance with the no-smoking requirement as is the existing total ban. Reality dictates otherwise. The search for alternative methods to light cigarettes within the buildings would be endless, limited only by the imagination of each inmate-smoker. Removal of both the means and the method to smoke is the most effective manner of complying with the State Health Law and the directive of the County Executive.
Respondents assert a limited ban would require greater supervision, lend itself to more frequent violation and increase the likelihood of disciplinary hearings.
Whether or not additional security personnel would be required to supervise a limited ban, the officers supervising the outdoor recreation area would have an additional concern to check on and attend to. Allowing possession of tobacco products *325 but not the means to ignite them would undoubtedly lend itself to more frequent violation than a total ban, with the resulting likelihood of an increase in disciplinary charges and hearings. The total ban on tobacco-related products rationally furthers the safe and efficient operation of the jail. The total smoking ban does not violate petitioners’ rights to equal protection.
Petitioners’ assertion that their medical concerns would not be adequately addressed is without merit. There is no evidence the system established by respondents, as set forth in the memorandum of Dr. Edward Herman dated March 22, 1995, for assessing and where appropriate treating withdrawal symptoms has not been followed.
The petition for judgment rescinding or modifying the no-smoking policy at the County Jail is denied. The petition is dismissed.