**Jaime MURCIA, Plaintiff,**

v.

**COUNTY OF ORANGE, City of Newburgh, Police Officer John Perez, Police Officers Currently Unknown, and Sheriff Frank Bigger Defendants.**

No. 00. Civ.1325 (CM)(MDF).

United States District Court, S.D. New York.

Oct. 4, 2002.

Edward H. Gersowitz, Gersowitz, Libo & Korek, P.C., New York, NY, for Plaintiff.

Christina Sanabria, County Attorney for Orange County, Goshen, NY, for Orange County.

James Fedorchak, Poughkeepsie, NY, for Defendant Sheriff H. Frank Bigger.

David Posner, McCabe & Mack LLP, Poughkeepsie, NY, for Defendant City of Newburgh.

## MEMORANDUM DECISION AND ORDER DISPOSING OF CROSS–MOTIONS FOR SUMMARY JUDGEMENT

MCMAHON, District Judge.

Plaintiff Jamie Murcia was involved in an automobile accident in the City of Newburgh. When Newburgh Police Officer John Perez arrived at the scene of the accident, he arrested plaintiff because a Federal arrest warrant for a person with the same name was outstanding. Plaintiff was unable to convince either Newburgh police officers or their counterparts at the Orange County jail that he was not the man named in the arrest warrant. According to plaintiff, as a result, he was subjected to four separate strip searches— one in Newburgh and three at the Orange County Correctional Facility ("OCCF")— before he was turned over to the Federal authorities, who recognized the error and released plaintiff.

Plaintiff brought this action in June of 2000 for violation of his civil rights, pursuant to 42 U.S.C. § 1983, and for negligence. In November, 2001, Plaintiff sought leave of the Court to amend his complaint to include Defendant H. Frank Bigger, the Sheriff of Orange County. The Court granted this request. Plaintiff served an Amended Complaint in January, 2002.

Plaintiff now moves for partial summary judgment against defendants County of Orange and Sheriff Frank Bigger ("defendants," for the purpose of this motion)[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that the OCCF violated plaintiff's constitutional rights by strip searching him pursuant to an unconstitutional policy of strip searching all detainees upon arrival at the facility. Plaintiff also moves to strike certain affirmative defenses raised by defendants pursuant to Rule 12(f). Defendants oppose plaintiff's motion for summary judgment and cross-move for summary judgment on the claims alleging that the OCCF maintained an unconstitutional policy of strip searching all inmates upon arrival at the facility.[2]

### FACTS

Plaintiff was involved in a traffic accident in the City of Newburgh, New York. (Rule 56.1 Statement at ¶ 15, 16.) A New York State DMV check of plaintiff's driver's license revealed that there was an outstanding warrant for his arrest from the State of Florida, for a federal charge of Bond Jumping. (*Id.* at ¶ 17; Perez Dep. at 42, Exh. H to Gersowitz Aff; Cert. of Lt. DiMarco.) Plaintiff was arrested and booked by City of Newburgh Police Officers. (Rule 56.1 Statement at ¶ 17.) On February 19, 1999, after arraignment before a Newburgh City Court Judge,

plaintiff was remanded to the custody of the OCCF. (*Id.* at ¶ 19.)

Corrections Officers at the OCCF conducted a visual body search (or "hygiene check" as Sergeant Zappolo referred to it) of plaintiff upon his admission. (*Id.* at ¶ 26.) Sergeant Zappolo stated that the hygiene check was the routine procedure at the OCCF. (Zappolo Dep. at 11–12, Exh. I to Gersowitz Aff.) According to Sergeant Zappolo, hygiene checks of inmates include "a check of their personal artifacts, their clothing, jewelry, and a check of their body." (*Id.* at 13.) "Body searches" consists of:

> The lifting of their arms, checking under their arms. Opening their mouth, lifting up their tongue. Turning their head from side to side, looking in the inside of their ears. Bending their ears forward, looking behind their ears. Running their fingers through their hair. Lifting up their genitals. Turning around. Picking up both feet, to check the bottoms of their feet. Bending over and a visual check of the rectum.

(*Id.* at 13–14.) Sergeant Zappolo testified that this procedure was performed on every new inmate at the OCCF: "if they come into the facility, they're searched." (*Id.* at 14.)

The second strip search of Mr. Murcia occurred after he was placed in the bullpen with other inmates. According to defendants, while plaintiff was in the book-

---

**1.** The City of Newburgh contests that Mr. Murcia was strip searched while in its custody. Because there is a clear issue of fact on this question, neither the plaintiff nor the City of Newburgh (or Officer Perez) has brought a summary judgment motion related to the strip search at the Newburgh police station.

**2.** In a letter dated July 12, 2002, defendants asked that the Court consider their opposition to plaintiff's summary judgment motion as a cross-motion for summary judgment because of plaintiff's "strong reliance on cases from

the Ninth Circuit in furtherance of their motion for partial summary judgment against Orange County and Sheriff Bigger." I granted defendants' request to convert their opposition into a cross-motion for summary judgment with respect to plaintiff's claims that he was strip searched upon arrival at the OCCF pursuant to an unconstitutional strip search policy. I also interpreted this letter as a motion for summary judgment based on Sheriff Bigger's qualified immunity from claims based on this strip search.

ing/receiving "bullpen" along with other inmates awaiting his assignment to a housing unit, Jail personnel smelled cigarette smoke coming from the bullpen area. (Zappolo Aff. at ¶ 5.) Because cigarettes are contraband in the OCCF, Officers asked the inmates who had been smoking the cigarette. (*Id.* at ¶ 6.) None of the inmates admitted to having any cigarettes, hence the Officers removed them from the bullpen and conducted body searches on all of them in order to find the contraband. (*Id.* at ¶¶ 7–8.)

On February 22, the U.S. Marshals came to pick up plaintiff. Plaintiff was strip searched again on this day. (Rule 56.1 Statement at ¶ 30.) Defendants claim that the U.S. Marshals conducted this third strip search of plaintiff. Plaintiff was released from the custody of the U.S. Marshals later that day after they discovered that he was not the Jamie Murcia who was wanted for Bond Jumping.

## STANDARDS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8

L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54, 57 (2d Cir.1987).

## DISCUSSION

I. The First Strip Search of Mr. Murcia Upon Arrival at the OCCF

A. *At all relevant times, the OCCF had a policy of strip searching all new arrivals at the jail.*

Plaintiff claims that the OCCF had an unconstitutional policy of strip searching every inmate who arrived at the facility. Plaintiff seeks summary judgment on his § 1983 claim relating to the first strip search he was subjected to at the OCCF.

Defendants respond that plaintiff offers no evidence to support his claim that the OCCF had a policy of strip searching all arriving inmates, noting that plaintiff did not depose Sheriff Bigger. Defendants acknowledge, however, that plaintiff has submitted the testimony of Sergeant Michael Zappolo in support of his claim that the OCCF had a blanket strip search policy in force at the time that plaintiff was admitted to the facility. Sergeant Zappolo stated that it was the Sheriff's Department's policy to conduct visual body cavity searches of each and every person who entered the OCCF: "if they come into the facility, they're searched." (Zappolo Dep. at 14, Exh. I to Gersowitz Aff.) Defendants offer no contradictory evidence.

It is hard to read Defendants' arguments with a straight face, given their history in front of this Court on this issue. *See Dodge v. County of Orange,* 208 F.R.D. 79 (S.D.N.Y.2002); *Lee v. Perez,* 175 F.Supp.2d 673, 681 (S.D.N.Y.2001). However, limiting myself to the record before me, I conclude that no reasonable trier of fact could reach the conclusion sought by defendants because no evidence supports it. The only evidence in the rec-

ord on the subject is Sergeant Zappolo's testimony that every inmate who arrived at the OCCF was subjected to the same "hygiene check" (read—strip search) that Mr. Murcia endured. Defendants offer no evidence whatever that raises a genuine issue of fact on the point.

I therefore conclude that defendants maintained a blanket strip search policy for arriving inmates as a matter of undisputed fact.

B. *Despite the existence of this policy, defendants are entitled to summary judgment dismissing plaintiff's claim under 42 U.S.C. § 1983.*

Despite the existence of this policy, Sheriff Bigger asserts that he is not liable to plaintiff. He first asserts that the search of Murcia was constitutional, even if the policy was not, because Murcia was arrested for a felony. Second, he argues that he is entitled to qualified immunity because the constitutionality of strip searching newly-arrested felons without making a particularized assessment of the risk they pose was not sufficiently settled law to permit the imposition of liability.

(1) *A policy of strip searching all new felony arrivals would be unconstitutional*

Bigger's first argument is that there was no constitutional violation, because to the extent OCCF's on-arrival strip search policy reached accused felons, it was constitutional. I disagree.

█ The Second Circuit has held that blanket policies subjecting all newly-arrested misdemeanor detainees in a local correctional facility to visual body cavity searches are unconstitutional. *Shain v. Ellison,* 273 F.3d 56, 64–65 (2d Cir.2001); *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994); *Walsh v. Franco,* 849 F.2d 66 (2d Cir.1988); *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir.1986). In order for a

visual body cavity search to be found reasonable under the circumstances, there must be some " 'particularized suspicion,' arising either from the nature of the charge or specific circumstances relating to the arrestee and/or the arrest." *Weber,* 804 F.2d at 802 (*citing United States v. Montoya de Hernandez,* 473 U.S. 531, 540, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). Sergeant Zappolo's testimony establishes that the OCCF officials made no particularized assessment of the need to strip search new arrivals. From this, plaintiffs argue that OCCF's strip search policy pertaining to new arrivals in unconstitutional.

Defendants first argue that this line of cases is no longer good law, because Supreme Court "impliedly" overruled *Weber* in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In *Turner,* the Supreme Court articulated the standard for reviewing the constitutionality of prison regulations as whether "[the regulation] is reasonably related to legitimate penological interests." 482 U.S. at 89, 107 S.Ct. 2254.

As this Court has noted several times before, the Second Circuit ruled long ago that *Weber* was not inconsistent with *Turner* because the former involved local jails and the latter dealt with prisons. *See Dodge v. County of Orange,* 209 F.R.D. 65, 75 (2002). Indeed, the dissent in *Shain* argued, as defendants do here, that *Turner* impliedly overruled *Weber.* But the majority rejected that argument, and refused to extend *Turner* to apply to local correctional facilities. *Shain,* 273 F.3d at 65. While I understand that Orange County presses this point again and again to preserve its rights, I am in no position to make any ruling that runs counter to the clear holding of the majority in *Shain,* and I decline to do so.

Furthermore, even adoption of a deferential posture to the decisions of jail ad-

ministrators, as required by *Turner*, does not dispense with the Fourth Amendment requirement that all searches, even searches of inmates, be reasonable. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). It is difficult to fathom what legitimate penological interest is served by strip searching an arriving detainee when there is no individualized reasonable suspicion to believe that he is secreting contraband on his person.

Defendants' next line of argument is different. They point out that the Second Circuit cases deal specifically with *misdemeanor* arrestees. Mr. Murcia, however, was arrested for a *felony*. Defendants argue that it is constitutionally permissible to strip search anyone brought into the facility on a felony charge.

The Second Circuit has never spoken to this issue. However, pronouncements by the United States Supreme Court in analogous contexts do not support OCCF's position that reasonable suspicion to strip search accused felons upon arrival at the facility always exists.

In the context of Fourth Amendment searches and seizures, the Supreme Court has stated that the distinction between felonies and misdemeanors "is minor and often arbitrary." *Tennessee v. Garner*, 471 U.S. 1, 14, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). As explained by the Supreme Court, "[m]any crimes classified as misdemeanors, or nonexistent, at common law are now felonies," and "numerous misde-

meanors involve conduct more dangerous than many felonies." *Id.* The Court found "the assumption that a 'felon' is more dangerous than a misdemeanant untenable." *Id.*

█ Coupling these words with the Second Circuit's strong statements about constitutional protections for strip searches of accused misdemeanants, I conclude that the law in this Circuit does not countenance a policy mandating strip searches of all felony arrestees simply because they stand accused of felonies. The "individualized reasonable suspicion" rule should apply to accused felons as well as misdemeanants upon arrival at a local correctional facility. Of course, I do not expect the Court of Appeals to state that strip searches of newly-arrived felons should be the exception rather than the rule, as it did in *Shain*. *See Shain*, 273 F.3d at 63; *Dodge*, 209 F.R.D. at 72. Felonies being what they are, I imagine that some combination of the circumstances of the arrest, nature of the crime charged, and the particular characteristics of the arrestee will render strip searches of many more accused felons legitimate. But not all. For example, forgery and securities fraud are felonies under New York law. N.Y. Penal Law § 170.15 (McKinney 1998) (forgery); N.Y. Gen. Bus. Law § 352–c(5) (McKinney 2002) (securities fraud). It is hard to imagine why being accused of these crimes would automatically provide reasonable suspicion to believe that a detainee was concealing contraband.[3]

This conclusion comports with a post-*Turner* ruling in one other circuit. In

**3.** In this regard, the fact that Murcia was arrested for bail jumping is unenlightening. Whether that particular felony arrest gave rise to reasonable suspicion would depend, it seems to me, on the nature of the underlying crime. In Murcia's case, the underlying charge was drug-related; while it appears that Officer Zappolo was unaware of that

fact—and while it played no part in the decision to strip search Murcia—I recognize that a strip search of a bail jumping drug defendant might well be constitutionally compliant. It is not necessary for me to reach this issue, however, because I conclude that qualified immunity cloaks Bigger, and hence the County, from liability.

*Kennedy v. Los Angeles Police Dep't.*, 901 F.2d 702 (9th Cir.1990), the Ninth Circuit held that a blanket policy requiring visual body cavity searches of all felony detainees was unconstitutional. 901 F.2d at 714. *See also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1445–46 (9th Cir.1991) (reiterating the unconstitutionality of blanket policy requiring body cavity searches of all felony detainees). The *Kennedy* Court found that "a felony arrest [did] not alter the level of cause required to justify a visual body cavity search" because the distinction between felony and misdemeanor detainees failed to address the likelihood that an arrestee would be concealing drugs, weapons, or contraband. *Kennedy*, 901 F.2d at 714, 716. The Ninth Circuit noted that officers should consider the nature of the crime charged, not whether the crime is a felony or a misdemeanor. Officers should evaluate whether the crime charged involves violence, drugs, or some other feature from which an officer could reasonably suspect that an arrestee was hiding weapons or contraband in a body cavity. *Kennedy*, 901 F.2d at 714.[4]

Defendants offer no evidence that would justify a policy for searching all felony detainees. They do not argue that the OCCF is frequently confronted with contraband smuggled into the facility. There is no testimony that unsuspecting arrestees have typically secreted contraband or weapons in their bodies in the past, let alone that felony arrestees are responsible for a greater amount of contraband than misdemeanor arrestees. Defendants' argument that the strip search of Mr. Murcia was constitutional as a matter of law, solely and simply because he was arrested for a felony, is unpersuasive. *See Kennedy*, supra., 901 F.2d at 713 (9th Cir.1990) ("A glaring omission from the [defendant's] justification is any documentation (or even assertion) that felony arrestees have attempted to smuggle contraband into the jail in greater frequency than misdemeanor arrestees.")

Because I disagree with defendants that a felony charge automatically provides reasonable suspicion to conduct a strip search, I also disagree with defendants' argument that plaintiff lacks standing to sue because he was accused of a felony. *See Shain*, 273 F.3d at 66–67 (rejecting defendants' argument that plaintiff did not have standing to sue because the officers had reasonable suspicion to conduct a strip search of the plaintiff).

*(2) Bigger Is Entitled to Qualified Immunity Because the Law On this Point Was Unsettled at the Time of the Search*

Concluding that a constitutional violation has been established is only the first step in a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Sheriff Bigger asserts that he is entitled to qualified immunity for Murcia's federal claims arising from the first strip search because reasonable officers in his position would not have known that a policy of strip searching all newly-arrested felons was unconstitutional. Although the matter is not free from doubt on the unusual facts of this case, I conclude that he is correct.

---

4. *Kennedy* is generally cited as having been "impliedly overruled" by the United States Supreme Court in *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). However, *Kennedy* was not overruled on the point at issue in this case, which is the propriety of automatically strip searching persons arrested for felonies. Hunter had the effect of overruling the other part of the Ninth Circuit's opinion in *Kennedy*, which addressed the propriety of submitting qualified immunity questions to a jury. The issue I am deciding in this opinion was not even raised in *Hunter*.

A government official making a policy decision is entitled to qualified immunity if the law was not clearly established at the time the determination was made. *Poe v. Leonard*, 282 F.3d 123 (2d Cir.2000). If the law is unclear, "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Koch v. Town of Brattleboro, Vermont*, 287 F.3d 162; 165–66 (2d Cir.2002). Furthermore, a supervisor or policy-maker in Bigger's position is only entitled to qualified immunity unless both the law violated by the underling and the supervisory liability doctrine under which plaintiff seeks to hold the supervisor liable were clearly established at the time of the violation. *Poe*, 282 F.3d at 135, and cases cited. Plaintiff cannot hold Bigger liable merely by showing that Zappolo committed a constitutional violation by strip searching him without reasonable suspicion. Rather, the focus of the inquiry must be on the behavior of the officer in question, which in this case is Sheriff Bigger. "Just as [Bigger's] liability depends in part upon his action and choices, his eligibility for immunity must depend upon those same choices." *Poe*, 282 F.3d at 135.

To the extent that Bigger's sweeping policy of searching all new arrivals at OCCF swept newly arrested misdemeanor defendants into its ambit, it was clearly unconstitutional—if not when made, then at least by the time the last of the *Weber-Walsh-Wachtler* trilogy was decided in 1994. *Shain*, 273 F.3d at 59, 66. Maintenance of the policy after that date, insofar as it applied to misdemeanants, could not be shielded by qualified immunity. *See, e.g., Murcia*, 185 F.Supp.2d at 291; *see also Lee v. Perez*, 175 F.Supp.2d 673 (S.D.N.Y.2001).

But insofar as the policy applied to accused felons, the law was not clear. If Bigger had promulgated a policy that mandated strip searching all new arrivals at OCCF who had been arrested for felonies, he would be entitled to qualified immunity, on the ground that the law relating to his officers' conduct was and is unsettled. "[E]ven if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to [qualified] immunity as a matter of law if it was not clear at the time of the acts at issue that an exception did not permit those acts." *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987).

Of course, Bigger did not promulgate such a policy. His policy, which Zappolo and other corrections officers followed to the letter, was to strip search every new arrival at OCCF. Zappolo had no idea whether plaintiff had been arrested for a felony or a misdemeanor. He searched Murcia because he searched everyone, no questions asked.[5]

So Bigger's policy sweeps within its ambit searches that would be both constitutional (or at least arguably constitutional) and clearly unconstitutional if they had been conducted after individualized evaluation. The question before me—which appears to be of first impression—is whether Bigger can claim the benefits of qualified immunity to the extent the policy implicates searches of arriving felony arrestees—searches, in other words, that were

---

5. This is consistent with the state of the record in *Lee v. Perez*, 175 F.Supp.2d 673 (S.D.N.Y.2001), in which another Orange County Corrections Officer testified that he conducted strip searches of all arriving inmates without checking paperwork to see what charges had been lodged against them, because everyone who arrived at OCCF got strip searched.

1020

not the subject of settled constitutional pronouncement.

█ I conclude that Bigger is entitled to qualified immunity in this situation.

In essence, plaintiff argues that Bigger cannot acquire qualified immunity by accident. Murcia happened to be an arrested felon, yes, but he correctly points out that his status played no part in the decision to strip search him. In other words, Murcia urges that Bigger cannot enjoy qualified immunity just because his officers *might* have had reasonable suspicion to conduct a strip search, when it is clear that in fact they *did not* have reasonable suspicion. They were not performing a discretionary act while under a reasonable misapprehension about the law; they were adhering to a non-discretionary policy of searching everyone.

Murcia's argument is both clever and troubling.[6] Ultimately, however, it begs the question, which is whether a reasonable person in Bigger's position would have known, by virtue of clearly established law, that a search of Murcia would violate his constitutional rights—not whether Sheriff Bigger should have acted differently in order to protect the clearly established constitutional rights of others. While I conclude that Murcia's Fourth Amendment rights were indeed violated by the automatic on-arrival strip search, those rights were not clearly established at the time the search was conducted. The clear-

ly established rights of others are, it seems to me, beside the point.

I reach this result with some misgivings. Only a few months ago, in *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the United States Supreme Court ruled that conduct could violate clearly established law even if the allegedly unconstitutional conduct had not been the subject of a prior court case. I do not think it a great leap from prior cases to conclude that invasive searches of all new arrestees who arrive at local correctional facilities—whether arrested for a misdemeanor or a felony—should be supported by reasonable particularized suspicion. Fourth Amendment jurisprudence concerning the reasonableness of strip searches has been rather consistent for many years.

However, the Supreme Court has also held that the right allegedly violated must be defined at an appropriate level of specificity before a court can conclude that it was clearly established. *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), *citing Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Shain*, the Second Circuit at least suggested that there could be a difference between strip searches of felony and misdemeanor arrestees, although is did so only in passing and in the post-arraignment context. *Shain*, 273 F.3d at 65 ("Although a New York felony defendant's post-arraignment deten-

---

6. It has also been lurking in the background in my prior OCCF and City of Newburgh strip search cases. The issue was not squarely raised until now because the plaintiffs in all the other cases before me were arrested for misdemeanors, not felonies. Also, we have not yet gotten beyond general constitutional questions and into the particulars of specific searches in cases like *Dodge v. County of Orange, supra*, and *Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y.2002). I have no doubt that when the defendants in those

actions assert that the circumstances of particular cases gives rise to reasonable suspicion that those misdemeanor arrestees should be strip searched, plaintiffs will counter that defendants ought not escape liability because of what they *might have done* but *did not do*—make an individualized assessment in each arrestee's case. Whether "what might have been" proves a bar to liability or merely goes to damages is a fascinating question. Fortunately, I need not consider it today.

tion may well be an indicator of an increased security risk...."). Under the doctrine of qualified immunity, Bigger is entitled to the benefit of any doubt about the state of the law. *Caldarola v. Calabrese,* 298 F.3d 156 (2d Cir.2002).

I am especially troubled by the notion that Sheriff Bigger could be entitled to qualified immunity on these facts, because the blanket policy pursuant to which Murcia was unthinkingly strip searched should have been off the books years ago. The doctrine of qualified immunity is supposed to protect public officials from being sued for conduct that they could not have known was unlawful. Maintenance of OCCF's blanket on-arrival strip search policy was unlawful and no reasonable law enforcement officer could have thought otherwise. But I fail to see why Murcia—who could not recover against Sheriff Bigger if OCCF had timely altered its policy to eliminate automatic strip searches of arriving misdemeanor defendants—should reap a windfall based on a knowing violation of someone else's constitutional rights.

According to plaintiff, the County's *Monell* liability is predicated on its deliberate indifference to the existence of a clearly unconstitutional policy. In *Shain,* the Second Circuit stated that the illegality of the Nassau County sheriff's policy provided the necessary basis for attaching liability to the County. *Shain,* 273 U.S. at 66; *see also Weber,* 804 F.2d at 803. The converse ought to be true as well. Orange County can hardly be liable for being deliberately indifferent to a policy that had arguably constitutional elements—or, more properly, that had elements whose unconstitutionality was not clearly established. The claim against the County arising out of Murcia's on-arrival search is therefore dismissed.

The Orange County defendants' motion for summary judgment dismissing the First Cause of Action is granted to the extent it addresses the first of the three strip searches.

## II. The Second Strip Search of Plaintiff (After Contraband Was Suspected in the Bullpen)

In Plaintiff's Memorandum of Law in Support of Summary Judgment, he states that "the facts establish that plaintiff was strip searched as a result of official policy without reasonable cause to conduct the *searches."* (*Id.* at 5., emphasis added) However, the circumstances of the second strip search are markedly different from those of the first, and plaintiff cannot conflate them.

The undisputed facts reveal that the second strip search occurred because the unnamed corrections officers who were guarding the bullpen area smelled cigarette smoke. Cigarettes are contraband in the facility. No one in the bullpen would admit to having a cigarette, so all the occupants of that area were strip searched. Plaintiff alleges that this search, too was conducted pursuant to an unconstitutional "policy" of strip searching inmates without reasonable cause.

 It is true, as plaintiff notes, that, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Constitution requires that searches be reasonable under the circumstances, even if performed on individuals who are incarcerated. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). If plaintiff had sued the corrections officers who conducted the search of his person, a jury might well have to determine whether they had reasonable suspicion to strip search plaintiff. Controlling contraband is a legitimate penological interest, and corrections officials generally have the right and duty to control

property and possessions within the facility under their supervision. *Gittens v. Coughlin,* 184 A.D.2d 812, 584 N.Y.S.2d 670 (3d Dep't 1992); *see also Jenkins v. Senkowski,* 221 A.D.2d 779, 634 N.Y.S.2d 224 (3d Dep't 1995); *Jarrett v. Westchester County Dep't of Health,* 169 Misc.2d 320, 646 N.Y.S.2d 223 (Sup.Ct. Westchester Co.1996) (holding that there is no constitutional right to smoke in prison). However, plaintiff had been strip searched only a short time before, and no contraband (including cigarettes) had been found on his person. Whether it was constitutionally appropriate to strip search him again would depend on a number of factors as to which the record before me is barren of evidence: how long after the first search the officers smelled smoke; how many people were put into the bullpen after plaintiff was whether those individuals had been strip searched before being put in the bullpen; and so on.

But plaintiff has not sued the corrections officers who conducted the second strip search on him. They are mentioned in the caption as John Doe defendants, but they have are neither been identified nor served, so they are not before the Court. The only persons Murcia has named and served with process—and hence, the only Orange County defendants in this action—are Sheriff Bigger and the County. Plaintiff does not contend that Sheriff Bigger was personally involved in strip searching him; he charges Bigger with making the policy pursuant to which he was searched. And he seeks to hold the County liable for the acts of its policy-maker, under *Monell.*

So plaintiff was required, in support of his motion for summary judgment, to establish the existence of some unconstitutional policy pursuant to which the second strip search was carried out. If he cannot establish that essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–33, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff has not offered any evidence that would permit a reasonable trier of fact to conclude that the second strip search was conducted pursuant to any policy at all. Plaintiff states, in conclusory fashion, that OCCF maintained a policy of strip searching inmates without reasonable cause; but the only policy for which he offers evidence (through Officer Zappolo, his star witness) is the previously-discussed policy of searching every inmate upon arrival. The second strip search of Murcia at OCCF was not carried out pursuant to that policy; it was conducted after plaintiff had been in-processed. Plaintiff offers no evidence of a broader OCCF policy of strip searching inmates without individualized reasonable suspicion after that initial search. Indeed, in his Reply Memorandum, plaintiff notes that his star witness, Officer Zappolo, "failed to indicate the terms of the policy, if any, that required cavity searches in such circumstances. *In fact, he does not even state that such searches were done as a matter of policy."* (Pl.'s Reply Br. at 8.)(emphasis added).

Of course, as Murcia points out, Defendants' June 13, 2002 memorandum of law, filed prior to the Reply Memorandum cited above, asserts (without evidentiary support) that the second search was conducted pursuant to facility policy. (*See* Memo of Law at 17.) So perhaps there is some policy at OCCF that mandates strip searches of inmates who are present in areas where the presence of contraband is detected. But on the present record I would only be guessing that such a policy exists, and if it does, I know nothing about its terms. Indeed, plaintiff does not pur-

port to know the policy's terms; in a further reply memorandum of law prepared at the request of the Court, plaintiff admits "... the terms of this policy remain unknown and the policy itself has not been identified specifically." Plaintiff's September 23, 2002 Memorandum at n. 3. Since I do not know what the policy is, I cannot possibly decide that it is unconstitutional - especially as many strip searches of inmates *are* constitutional. *See Bell v. Wolfish,* 441 U.S. 520, 546–48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (jail's policy of conducting visual, no contact body cavity strip searches of pre-trial detainees following visits with outsiders does not violate the Fourth Amendment).

■ On this record, I cannot even make the first determination required in a qualified immunity analysis: whether plaintiff's allegations establish a constitutional violation. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Plaintiff sought summary judgment against a policy-maker; plaintiff carries the burden of proving the existence of the policy; and plaintiff must demonstrate that the policy is unconstitutional. By conflating the second (and third) strip searches with the on-arrival search, plaintiff has failed to discharge his burden. I must, therefore, deny plaintiff's motion for summary judgment of liability to the extent of the second search.

The fact that plaintiff's motion is denied does not mean that I can grant defendants' cross motion, either on the merits or on the ground of qualified immunity. A cross-movant bears the same obligation as the movant—to support its claim to summary judgment with specific evidence. Aside from the unsupported remark of counsel quoted above—and it should go without saying that counsel is not compe-

tent to testify—there is nothing in the record that would permit me to decide (1) whether there is a policy or (2) what the policy is. I simply cannot perform the *Saucier* analysis on this record.[7] Thus, defendants' motion for summary judgment as to the second search is also denied.

### III. The Third Search: Prior to his transfer to Federal Custody

Plaintiff claims that he was strip searched a third time before he was transferred to the custody of the U.S. Marshals. The Defendants contend that it was the U.S. Marshals who conducted this search, after plaintiff was transferred to their custody. Because there is an issue of fact about who conducted the third strip search, plaintiff has withdrawn his motion for summary judgment regarding that search.

However, unless plaintiff establishes at trial that the third search was not only conducted by OCCF officers, but was carried out pursuant to some unconstitutional policy promulgated by Sheriff Bigger—such as a policy of strip searching all departing inmates, or all inmates who are being transferred to other institutions—it appears to this Court that Sheriff Bigger and the County will be entitled to a directed verdict, for the reasons discussed above. I mention this so that no one will be under any misapprehension about Murcia's burden at trial.

### IV. Unidentified Claims Arising Under State Law

The above rulings deal only with the Federal claims in this action. However, in his complaint, plaintiff asserts that his First Cause of Action arises under the

---

7. Just so it is clear, I am not denying Sheriff Bigger qualified immunity. The state of the record precludes me from reaching the question, because the state of the record precludes me from determining what *Saucier* identifies as the predicate issue—whether any constitutional violation was committed.

Fourth Amendment to the United States Constitution "and the Laws of the United States and the State of New York." Plaintiff does not identify the laws of the State of New York on which he relies.

Art. I, Sec. 12 of the New York State Constitution parallels the Fourth Amendment in prohibiting unreasonable searches and seizures. A brief search of New York case law does not suggest that its protections extend beyond those of the Federal constitution in the area of strip searches of arrestees or prisoner.[8] All the New York cases I have found (none of which deals with a situation similar to plaintiff's) either follow[9] or assume without deciding[10] that the State law applicable to strip searches of persons arrested for crimes requires reasonable cause before a strip search can be conducted. Earlier this year, the New York Court of Appeals, in *People v. More,* 97 N.Y.2d 209, 738 N.Y.S.2d 667, 764 N.E.2d 967 (2002), suppressed evidence collected from the rectum of an individual who was searched incident to a lawful arrest on a felony narcotics charge, because the police failed to obtain a warrant and identified no exigent circumstances that dispensed with the warrant requirement. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Court relied extensively on federal case law interpreting the Fourth Amendment and gave no indication that the State Constitution gave rise to greater protection against custodial strip searches than did the Federal Constitution.

However, the instant case is in an odd posture. The only named Orange County defendants are the Sheriff and the County. Sheriff Bigger did not conduct the search; he made the policy. There being no doctrine of qualified immunity under state law, Sheriff Bigger cannot be absolved of responsibility for the first strip search (which was conducted pursuant to his policy) on that ground. *Micalizzi v. Ciamarra,* 206 F.Supp.2d 564, 581 (S.D.N.Y.2002). Similarly, there is respondeat superior liability for municipalities under State law, so if Sheriff Bigger is liable for a violation of State law, the County is also liable. *Hacker v. City of New York,* 26 A.D.2d 400, 275 N.Y.S.2d 146 (N.Y.App.Div.1966), *aff'd* 20 N.Y.2d 722, 283 N.Y.S.2d 46, 229 N.E.2d 613 (N.Y.1967) *cert. denied* 390 U.S. 1036, 88 S.Ct. 1436, 20 L.Ed.2d 296 (1968). Unfortunately, no one—not plaintiff, not defendants—has briefed any State law issues, despite their mutual request that I grant them summary judgment.

I asked the parties to address questions of state law in supplemental briefs. Plaintiff responded with the following footnote:

Plaintiff withdraws these claims from consideration in this motion given that the New York State Constitution's proscription regarding unreasonable searches and seizures is generally interpreted in concert with the Fourth Amendment requirements and prohibitions. It remains however, that enlargements of the Fourth Amendment's pro-

---

8. In a recent decision, the Appellate Division, Fourth Department, asserted that the New York court of Appeals had interpreted the State Constitution to "impose[ ] some limits on such searches [incident to a lawful arrest] not found under the Fourth Amendment, particularly in the area of minor traffic violations...." *People v. Taylor,* 294 A.D.2d 825, 741 N.Y.S.2d 822 (4th Dep't 2002), citing *People v. Marsh,* 20 N.Y.2d 98, 101, 281 N.Y.S.2d 789, 228 N.E.2d 783,—, (N.Y.1967). I find *Marsh* completely consonant with Sec-

ond Circuit jurisprudence concerning strip searches of misdemeanor arrestees.

9. *See, e.g., Young v. Coombe,* 227 A.D.2d 799, 642 N.Y.S.2d 443 (3d Dep't 1996).

10. *People v. Martinez,* 268 A.D.2d 266, 701 N.Y.S.2d 377 (1st Dep't 2000)("Assuming, without deciding, that reasonable suspicion was required to conduct the search at issue, ...") citing *Weber v. Dell,* 804 F.2d 796 (2d Cir.1986)

tections have been enacted under the New York Constitution where a compelling state interest has been shown. As such, Plaintiff does not wish to voluntarily withdraw these claims so as to retain an opportunity to perfect an appeal and an accompanying request for certification of the question (i.e., New York State's own protections against cavity searches by government officials) to the Court of Appeals.

I assume that plaintiff refers to the New York Court of Appeals, not the United States Court of Appeals for the Second Circuit.

Plaintiff correctly (if obliquely) identifies the forum in which issues of New York constitutional law ought to be litigated— the courts of the State of New York. Of course, plaintiff has the ability to raise those issues in Federal court, but he has not only declined my invitation to address these issues on their merits but expressed a clear interest in having the issue decided in the proper forum. I am happy to oblige him. I decline to exercise supplemental jurisdiction over plaintiff's First Cause of Action to the extent it purports to arise under the Constitution and law of the State of New York, on the ground that these claims, by plaintiff's own admission, raise a novel issue of State law as to which the New York's courts should speak in the first instance. 28 U.S.C. § 1367(c)(1).

## V. The Motion to Strike Defendants' Affirmative Defenses is Denied

■■■ Under Rule 12(f), "a court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). This action should not be taken lightly. However, it may be appropriate where the defense shown is totally insufficient as a matter of law. *Lip-*

*sky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976) (*citing Gleason v. Chain Serv. Rest.*, 300 F.Supp. 1241 (S.D.N.Y.1969)). Upon a showing that there exist no questions of law or fact that would allow the defense to succeed and that inclusion of the defense would be prejudicial, such defenses must be stricken. *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986); *see also Byas v. New York City Dept. of Correction*, 173 F.R.D. 385, 388 (S.D.N.Y.1997) (*citing Salcer*, 744 F.2d at 939); *SEC v. Toomey*, 866 F.Supp. 719, 722 (S.D.N.Y.1992).

Plaintiff moves to strike defendants' defenses of reasonable suspicion, constitutional compliance, and good faith, all of which apply to the First Cause of Action.[11] Since issues of reasonable suspicion, constitutional compliance and qualified immunity are very much to be considered as we evaluate plaintiff's right to recover for the second and third strip searches, I deny plaintiff's motions to strike these affirmative defenses.

## VI. Plaintiff's Second Cause of Action

Finally, Murcia pleads a second cause of action, in negligence. The parties have not briefed this issue, although it appears to the Court that the claim may be legally insufficient. I have no basis to address it at this time, although I will of course entertain a motion on the law made at the end of plaintiff's case.

This constitutes the decision and order of the Court.

---

11. Sheriff Bigger has withdrawn his affirmative defense of lack of personal jurisdiction.

(Def's. Mem. in Opp. to Pl's Motion for Partial Summ. J. at 17.)